## DUNAGAN v. APPALACHIAN POWER CO.

(Circuit Court of Appeals, Fourth Circuit. January 12, 1926.)

No. 2398.

1. **Electricity** ⊜19(12) — **Contributory negligence of customer's watchman, electrocuted in attempt to pull electric switch when defect in power line was apparent, held for jury.**

Customer's watchman, who was electrocuted in attempt to pull electric light switch when some defect in power line was apparent, *held* to have acted as ordinarily prudent man under circumstances, and court could not say as matter of law that man of ordinary prudence would not have been justified in doing, for protection of property, all that deceased did.

2. **Electricity** ⊜19(3)—**Contributory negligence of customer's watchman electrocuted held affirmative defense, to be shown by preponderance of evidence.**

Where watchman was killed in attempting to pull electric switch, after noticing defect in power line furnishing power to employer, there was no exception to general rule that contributory negligence is affirmative defense, of existence of which defendant must satisfy jury by fair preponderance of evidence.

In Error to the District Court of the United States for the Southern District of West Virginia, at Bluefield; George W. McClintic, Judge.

Action by Ellen Mary Dunagan, administratrix of the estate of Emery Dunagan, deceased, against the Appalachian Power Company. Judgment for defendant, and plaintiff brings error. Reversed, and new trial awarded.

William H. Werth, of Tazewell, Va. (Robert O. Crockett, of Tazewell, Va., on the brief), for plaintiff in error.

George Richardson, Jr., of Bluefield, W. Va., for defendant in error.

Before WADDILL, ROSE, and PARKER, Circuit Judges.

ROSE, Circuit Judge. The parties in this court occupy the same positions they did below. The plaintiff, a citizen of West Virginia, seeks to recover from the defendant, a Virginia corporation, damages for the death of her husband and decedent, who will be herein referred to by the latter appellation.

The defendant generates, distributes, and sells electricity. Its pole lines support, not only high voltage transmission and less heavily charged, but still deadly, lighting lines, but the ordinarily innoxious telephone wires as well. They pass through or along the land of one of its customers, the Pocohontas Fuel Company, in whose employ the dece-

dent was. The defendant furnished the fuel company electricity to light its stable and to operate its fan, and probably for other purposes. On a pole near the stable was a switch, by which the current could be cut off from the stable, and perhaps from the fan also. The decedent was one of the fuel company's watchmen. Among his duties was that of using the switch when it was desired to put out the stable lights. Some 2½ hours before he was killed, at a point some 3 miles nearer defendant's power house, a broken insulator was noticed, causing electrical disturbance serious enough to attract the attention of persons in the neighborhood and to break 2 of the 17 wires upon its poles. About 20 or 30 minutes before the decedent received the fatal shock, the telephone line on the pole opposite his watchbox, and which, in the direction of the defendant's plant, was next that upon which the switch was, began to arc, at first intermittently and then continuously, finally producing what looked like a ball of fire. When this happened, decedent, declaring that "something had to be done," and that he had a "switch up there which he could pull, and throw the current off that line," got up and started to the switch pole.

The man who was with him in his shanty, and who so far as the record discloses was the only person at that time anywhere about, waited two or three minutes before following him. When this person got close to the location of the switch, he saw the decedent lying on the ground about 15 or 18 feet from the pole, with his arms outstretched and with one hand reaching within about 6 inches of the wire fence which surrounded it. The deceased struggled once or twice after the witness saw him on the ground, but he never spoke again. Medical examination showed that his death was due to an electric shock, and that he had apparently grasped some heavily charged substance with his right hand. A moment or so after he left his shanty, the telephone wires opposite broke, having burned in two, and the light wires at the switch box followed or preceded them. The indications were that he received the fatal shock before he had a chance to move the switch, for, while the door of the switch box was open, the switch itself had not been pulled, and there were unbroken spider webs in its box.

At the close of the plaintiff's evidence, on motion of the defendant, the learned District Judge instructed the jury to return a verdict for the defendant, on the ground that plaintiff's intestate had, or should have had, am-ple warning that he was dealing with a most dangerous proposition, and, with such knowledge, he unnecessarily went into a place of danger.

[1] The defective condition of the defendant's appliances had created such a situation as threatened immediate peril to the property which the decedent was employed to watch. Any man in his place might well feel that he was bound to do all that he could for its protection. If he judged wrongly, it was because he was placed in a situation brought about by the defendant, and which seemed to call for prompt action. If the fuel company had been an individual, personally present, it would have been entitled to do what in reason it could to protect its property. In the decedent's relation to the company, he stood in its shoes. Ivy v. Wilson, Cheves (S. C.) 74; Liming v. Illinois Central R. Co., 47 N. W. 66, 81 Iowa, 246, 253; Thorn v. James, 14 Manitoba, 373; 1 Shearman & Redfield on Negligence, § 85d. We cannot hold as a matter of law that a man of ordinary prudence would not have been justified in doing for the protection of his property all that the decedent did.

It is true that the record as it stands does not show that what was wrong on defendant's line threatened any immediate danger to human life, to save which one may take chances which he might not be justified in doing merely to protect property. Nevertheless, as the authorities already cited teach, he who acts to guard property, whether of his own, of his employer, or of a third person, threatened by the consequences of the negligence of some one else, may properly do what he could otherwise attempt only at his own risk. We do not see anything to show that decedent acted as an ordinarily prudent man, under the circumstances in which he found himself, would not have done, and therefore such cases as Pegram v. Seaboard Air Line, 51 S. E. 975, 139 N. C. 303, 4 Ann. Cas. 214, are not in point.

[2] The situation, as it manifested itself to the decedent when he left his watchbox, was not such as would necessarily warn a man of reasonable prudence, having no more acquaintance with electrical matters than has the average person, that there was danger in going to the switch, one of the purposes of which he might well have thought was to prevent or minimize the damage likely to result from such disturbances as were then in evidence. He knew that there was trouble on the line, but there was nothing intrinsically unreasonable in his supposing that the peril of using the switch was small, and still less

in his thinking that he was taking little risk in coming within 15 or 18 feet of it. There is nothing in the facts of this case to make it an exception to the general rule that contributory negligence is an affirmative defense, of the existence of which, whenever there is room for reasonable minds to differ, the defendant must satisfy the jury by a fair preponderance of the evidence.

In the court below, so far as the record discloses, every one assumed that, when the plaintiff closed her evidence, she had made a prima facie showing of negligence upon the part of the defendant. At all events, we are satisfied that, as the record stood, she had done so. At the new trial, defendant may offer testimony which will put another aspect upon that part of the case. If so, the plaintiff will not be entitled to recover, unless the jury shall find that the negligence of the defendant has been established by a preponderance of all the evidence then before it. Sweeney v. Erving, 33 S. Ct. 416, 228 U. S. 233, 240, 57 L. Ed. 815, Ann. Cas. 1914D, 905.

From what has been said, it necessarily follows that the judgment below must be reversed, and a new trial awarded.

Reversed.