## SCOTT v. JOHN H. HAMPSHIRE, INC.

[No. 117, September Term, 1966.]

*Decided April 5, 1967.*

The cause was argued before HAMMOND, C. J., and HORNEY, MARBURY, BARNES and FINAN, JJ.

*Martin E. Gerel,* with whom was *Leonard J. Ralston, Jr.* on the brief, for appellant.

*Lansdale G. Sasscer, Jr.,* with whom were *Sasscer, Clagett, Powers & Channing* on the brief, for appellee.

HORNEY, J., delivered the opinion of the Court.

In this case, where a workman was injured while attempting to avert injury to other workmen, the question is whether the lower court erred when it took the case from the jury. Charles R. Scott (Scott) is the plaintiff-appellant and John H. Hampshire, Inc., is the defendant-appellee.[1]

On the date of the accident, the plaintiff, who had been a

---

1. The suit for personal injuries brought by Charles R. Scott against John H. Hampshire, Inc., and other defendants, subsequently interpleaded by Hampshire as third parties defendant, was dismissed at the trial by Scott as to all of the defendants but Hampshire, leaving only Hampshire as a defendant to the action filed by Scott and leaving Permanent Builders Company, Robert H. Jackson, Roy Hays, and George's Transfer and Rigging Company, Inc., third party defendants, as to the third party claim of Hampshire.

structural ironworker for seven years and had previously operated a crane while he was a seabee in the United States Navy,[2] was working for a contractor in the construction of a regional library in Prince George's County. On that day, while he was acting as a connector [3] on the roof of the building, he noticed that instead of a longer choker [4] a piece of chain attached to a steel cable for the purpose of lengthening it was being used as a choker in the unloading of steel from a truck with a crane. Concerned about what he had observed, the plaintiff came down from the building to warn nearby workmen of the dangerous situation. As he approached the truck, the crane was tipping out of its tracks because it was overloaded with bundles of steel decking (estimated as weighing from 4000 to 8000 pounds) that were being pushed off the truck to the ground. When the plaintiff arrived at the truck he said to everyone in the area "stop what you are doing" for "you are doing it unsafely" and then asked who was directing the operation. A workman standing on the truck and giving signals to the crane operator stated that he was in charge and that his employer was Hampshire. The bundles of steel, which were then on the ground, had a chain composed of one and a quarter inch links wrapped around them. When the supervisor was informed that the use of the chain to unload steel was dangerous and that someone was likely to get hurt, he stated that they would move it further on and stop. And as the steel was moved ahead, the chain broke and struck the plaintiff on the head and about his body while he was standing about twenty feet away. Hampshire, who was the roofing contractor, was the owner of the steel.

When the defendant moved for a directed verdict at the close of the case for the plaintiff, the trial judge, assuming the existence of primary negligence, ruled that the plaintiff had assumed the risk and was therefore guilty of contributing to the accident. In so ruling, the court was in error.

---

2. As a seabee the plaintiff was a member of a construction battalion in the civil engineer corps of the Navy and helped to build and defend naval installations and aviation facilities.

3. A connector is one who assembles steel as it is raised by a crane from the ground to a structure.

4. A choker is a piece of steel cable of varying lengths with an eye at each end which is stronger than a link chain.

While there is a difference between an assumed risk and contributory negligence in that an assumed risk implies an intentional exposure to a known danger whereas contributory negligence is the doing or failure to do something which directly contributes to the injury sustained, *Burke v. Williams*, 244 Md. 154, 223 A. 2d 187 (1966) and *Wiggin v. State use of Collins*, 232 Md. 228, 192 A. 2d 515 (1963), the distinction between the two is often difficult to draw and, as is the case here, is often without importance. *Bull Steamship Lines v. Fisher*, 196 Md. 519, 77 A. 2d 142 (1950). So regardless of whether the defense was contributory negligence or assumption of risk, neither defense is applicable in this case where the conduct of the defendant appears to have created such a situation as to justify if not to compel the plaintiff to undergo the risk of being injured in order to warn others and avert their harm. *People's Drug Stores v. Windham*, 178 Md. 172, 12 A. 2d 532 (1940) ; *Restatement of Torts,* § 893. Also see *Green v. Wholesale Phosphate and Acid Works,* 29 F. 2d 746 (D. Md. 1928) ; *Dunagan v. Appalachian Power Co.,* 11 F. 2d 65 (4th Cir. 1926) ; *Restatement of Torts 2nd,* § 472.

This Court, in recognizing the principle that it is commendable to save life, has consistently held that a person who endeavors to avert the consequences of the negligence of another person, by an act which is dangerous but not reckless, is not precluded from recovering damages for injury suffered as a consequence of having interposed. *Maryland Steel Co. v. Marney,* 88 Md. 482, 42 Atl. 60 (1898) ; *American Express Co. v. Terry,* 126 Md. 254, 94 Atl. 1026 (1915) ; *State use of Dove v. M. & C. C. of Baltimore,* 141 Md. 344, 118 Atl. 753 (1922) ; *Lashley v. Dawson,* 162 Md. 549, 160 Atl. 738 (1932). In *Marney* it was said (at p. 498) that the "law has so high a regard for human life that it will not impute negligence to an effort to preserve it, unless made under such circumstances as to constitute rashness." The same statement of law was cited with approval in *Terry* and *Dove*. And in *Lashley* it was also said (at p. 564) that "the law measures acts done under the spur and stress of sudden emergencies * * *, when done for the purpose of averting serious or even fatal consequences to others, with more indulgence than when they are impelled by

no such motive." In a case such as this, the incurring of danger was not negligence *per se* and the question of whether the giving of the warning was justified is ordinarily one for the jury to decide. *State use of Dove v. M. & C. C. of Baltimore, supra.*

Although the trial court, in ruling on the motion for a directed verdict, assumed the existence of primary negligence, we think there was sufficient evidence in the record to support an inference, if not proof, that the defendant was negligent. That it may have been unsafe, as the plaintiff thought, to use a chain instead of a cable as a choker was supported by the fact that the chain broke the next time the bundles of steel were moved and injured the plaintiff. Further, the decision of the supervisor to resume or continue to use the cable spliced with a chain to move the steel a little further on before stopping, after he had been informed or reminded that the use of the chain was dangerous, seems to support an inference that, although the supervisor was convinced or already knew that the continued use of the chain was unsafe, he was determined to take a chance on the chain not breaking.

With further reference to the testimony of the plaintiff, who, over objection, was allowed to give his opinion that it was safer to use a cable rather than a chain as a choker, we see no reason for precluding him from stating that a chain should not have been used in unloading steel from a truck with a crane. As a seabee in the Navy, the witness had not only learned that the unloading of steel with a chain instead of a cable as a choker was unsafe, but also had operated a crane in the building of naval installations and aviation facilities. It is probable therefore that the plaintiff could be considered qualified to testify as an expert witness. As a general rule, a witness who in studying or by experience has acquired knowledge of a particular subject or activity—not within the ken of an ordinary person—is considered to be an expert witness and as such is qualified to give an opinion as to the matter of his expertise. See *Rotwein v. Bogart,* 227 Md. 434, 437, 177 A. 2d 258 (1962) ; *Williams v. Dawidowicz,* 209 Md. 77, 85, 120 A. 2d 399 (1956) ; *Penn., etc., Casualty Ins. Co. v. Messenger,* 181 Md. 295, 298, 29 A. 2d 653 (1943). See also *Hewitt v. Board of Censors,* 243 Md. 574, 221 A. 2d 894 (1966) ; *State Health Department v.*

*Walker,* 238 Md. 512, 209 A. 2d 555 (1965); 32 C.J.S. *Evidence* § 456; 20 Am.Jur. *Evidence* § 775 *et seq.* However, even if we assume that he was not an expert, there is little doubt that his experience and observations with regard to the use of cables instead of chains at least qualified him to give an admissible lay or nonexpert opinion. In some circumstances, an ordinary nonexpert witness qualified by observation and experience may be permitted to testify with respect to such matters as the realization of danger. See the cases cited in 10 M.L.E. *Evidence* § 243, nn. 24-27; C.J.S. *op.cit.* § 546 (59) a; *Haynes v. Bernhard,* 268 S. W. 509 (Tex.Civ.App. 1925).

> *Judgment reversed and case remanded for a new trial; appellee to pay the costs.*