722 A.2d 407

**Barbara BODDIE**

v.

**Astley H. SCOTT.**

**No. 210, Sept. Term, 1998.**

Court of Special Appeals of Maryland.

Jan. 5, 1999.

Giancarlo Ghiardi (Lisa A. Howie, on the brief), Annapolis, for appellant.

Lloyd J. Eisenberg (Lloyd J. Eisenberg & Associates, P.A., on the brief), Silver Spring, for appellee.

Argued before DAVIS, SALMON and JOHN P. MILLER (Specially Assigned), JJ.

SALMON, Judge.

Appellant, Barbara Boddie, negligently started a fire in her kitchen. She called to appellee, Astley Scott, to help her extinguish the fire. Mr. Scott successfully put the fire out, but in doing so, severely burned his hands. A jury in the Circuit Court for Prince George's County found that Ms. Boddie was liable for the injury Mr. Scott received. Ms. Boddie contends on appeal that Mr. Scott is barred from recovery against her by the assumption of the risk doctrine. Whether Ms. Boddie is right depends on how we resolve a question of first impression in this state, viz: Is the defense of assumption of risk available when a plaintiff is injured while attempting to save property from a peril created by the defendant's negligence? We hold that the doctrine is unavailable when a plaintiff is injured in attempting such a rescue, so long as the plaintiff acts reasonably under the circumstances.

## I. FACTS[1]

On October 6, 1995, appellant was at her home in Ft. Washington, Maryland, when she phoned Warner Electric and asked that they send an electrician to her home to fix a problem with one of her electrical outlets. While waiting for an electrician to arrive, she began to prepare dinner. Ms.

---

**1.** The facts are set forth in the light most favorable to Mr. Scott. *See Pahanish v. Western Trails, Inc.,* 69 Md.App. 342, 353, 517 A.2d 1122 (1986)(When a party moves for judgment in a jury trial, the trial judge must consider the evidence, and all inferences that may be drawn legitimately from that evidence, in the light most favorable to the non-moving party.). In this appeal, the only question presented is:

Did the trial judge err in denying appellant's motions for judgment because appellee assumed the risk of injury when he knowingly reached for and voluntarily carried a burning pan of oil down a hallway?

Boddie poured cooking oil into a frying pan and lit the stove. After the oil had heated for five minutes or so, the doorbell rang. Ms. Boddie, leaving the oil cooking, went to the front door and greeted appellee, Astley Scott, an electrician employed by Warner Electric.

Forgetting the cooking oil, Ms. Boddie escorted Mr. Scott to the basement recreation room and told him of the problem with an outlet. The two were in the basement for approximately ten minutes when Mr. Scott asked Ms. Boddie to go upstairs to get some appliance that she regularly used (such as a hair dryer) so that he could test the electrical outlet.

Ms. Boddie got as far as the top of the basement steps when she yelled, "[P]lease, sir, come help me, my house is on fire." She yelled the same plea a second time, and Mr. Scott ran upstairs to the kitchen. There he saw flames rising in a huge column above the frying pan. In Mr. Scott's words, "She had like about six feet of flames towering all the way up to the ceiling." The flames were "curling over" the ceiling, and the kitchen cabinets were already blackened. He thought, "The place [will] be burned down in no time."

With his "adrenaline ... flowing" and in an excited tone, Mr. Scott inquired, "Miss Boddie, what do I put this out with[?]" Ms. Boddie, who had a fire extinguisher under her sink, made no response but stood "scared" and immobile. Mr. Scott repeated the question, but again got no response. He then asked Ms. Boddie if she had something he could use to hold the frying pan. Once again, Ms. Boddie made no response. Mr. Scott saw no dish towels or potholders in the vicinity. He did, however, espy a newspaper. After asking Ms. Boddie to open the front door, Mr. Scott grabbed a part of the newspaper, put it around the frying plan handle, seized the handle of the frying pan in both hands, and started to walk briskly towards the front door, which was approximately eighteen feet away. As he walked, the flames from the cooking oil traveled toward him, burning his hands. Because his hands were being burned, he hurled the flaming pan out the front door—which was held open by Ms. Boddie's six-year-

old grandson, Anton Hale. When he threw the pan, grease splashed onto Mr. Scott's hands and seriously injured him.

Approximately thirty seconds elapsed between the instant Mr. Scott first saw the flames and the point when he picked up the frying pan. Mr. Scott described his state of mind immediately prior to picking up the pan by saying: "I was scared, but I wasn't scared stiff."

Mr. Scott was about seven feet from the front door when he threw the pan. His hands were not burned from holding the frying pan handle—presumably because the palms of his hands were insulated by the newspaper he had wrapped around the handle.

Mr. Scott knew the oil was hot and knew when he threw the pan that this action could be a risk to his own safety, but he decided to throw the pan anyway to save himself because the flames were coming back in his direction and he feared that if he did not throw the pan he "would be engulfed in flames."

Mr. Scott sued Ms. Boddie in the Circuit Court for Prince George's County for negligence. On September 3, 1997, a jury trial was held (Sothoron, J., presiding) on the issue of liability only. Ms. Boddie made a motion for judgment in her favor at the end of the plaintiff's case and at the conclusion of the entire case. She contended, *inter alia*, that Mr. Scott's claim was barred by the assumption of the risk doctrine.

The trial judge denied the motions for judgment. The jury determined (1) that Ms. Boddie negligently caused plaintiff injury, (2) that Mr. Scott was not contributorily negligent, and (3) that Mr. Scott did not assume the risk of injury. Based on a stipulation as to damages, Judge Sothoron entered a judgment in the amount of $100,000 against Ms. Boddie and in favor of Mr. Scott.

## ANALYSIS

The most recent Court of Appeals decision concerning the doctrine of assumption of risk is *ADM Partnership v.*

*Martin,* 348 Md. 84, 702 A.2d 730 (1997), in which the Court said:

> In Maryland, it is well settled that in order to establish the defense of assumption of risk, the defendant must show that the plaintiff: (1) had knowledge of the risk of the danger; (2) appreciated that risk; and (3) voluntarily confronted the risk of danger. (Citations omitted.) "The doctrine of assumption of risk rests upon an intentional and voluntary exposure to a known danger and, therefore, consent on the part of the plaintiff to relieve the defendant of an obligation of conduct toward [her] and to take [her] chances from harm from a particular risk." *Rogers v. Frush,* 257 Md. 233, 243, 262 A.2d 549 (1970). *See also* W. Page Keeton, *Prosser and Keeton on the Law of Torts* § 68 at 490 (5 th ed.1984) (hereinafter *Prosser and Keeton*). Assumption of risk means "voluntary incurring that of an accident which may not occur, and which the person assuming the risk may be careful to avoid after starting." *Schroyer[ v. McNeal],* 323 Md. [275,] 281, 592 A.2d 1119 [ (1991) ]. Thus, if established, it functions as a complete bar to recovery because "it is a previous abandonment of the right to complain if an accident occurs." *Warner [v. Markoe],* 171 Md. [351,] 360 [189 A. 260 (1937) ].

*Martin,* 348 Md. at 90–91, 702 A.2d 730.

■ In the case *sub judice,* there can be no doubt but that Mr. Scott had knowledge of the risk of danger and that he appreciated the risk when he decided to carry the flaming pan outside. There is a question, however, as to whether Mr. Scott *voluntarily* assumed the risk of injury. In regard to voluntariness, the Court said in *Martin:*

> [I]n order for a plaintiff to assume voluntarily a risk of danger, there must exist "the willingness of the plaintiff to take an informed chance," *Schroyer,* 323 Md. at 283, 592 A.2d 1119; there can be no restriction on the plaintiff's freedom of choice either by the existing circumstances or by coercion emanating from the defendant. This is so because

[e]ven where the plaintiff does not protest, the risk is not assumed where the conduct of the defendant has left him no reasonable alternative. Where the defendant puts him to a choice of evils, there is a species of duress, which destroys the idea of freedom of election.

*Prosser and Keeton* § 68 at 490–91.

*Martin,* 348 Md. at 92–93, 702 A.2d 730.

In 4 Fowler V. Harper et al., *The Law of Torts* § 21.1, at 204–05, 208–10 (2d ed.1986), the authors say:

It is clear then that the concept of assumption of risk in the primary sense is not to be considered in a situation where defendant has breached a duty towards plaintiff. . . . This means specifically that even when a danger is fully known and comprehended plaintiff is not barred from recovery simply because he chooses deliberately to encounter it, in the following situations:

\*     \*     \*

(7) Where plaintiff seeks to rescue another person, or his own or another's property which is endangered by defendant's negligence. . . . Of course the means of rescue chosen might be so unreasonable as to amount to negligence even in the light of the emergency. If so, plaintiff will be barred for contributory negligence but not for want of breach of duty towards him.

*Id.* (footnotes omitted).

W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 68, at 491 (5 th ed.1984), agrees with Harper & James but expresses the rule in a slightly different manner:

Those who dash in to save their own property, or the lives or property of others, from a peril created by the defendant's negligence, do not assume the risk where the alternative is to allow the threatened harm to occur. In all of these cases, of course, the danger may be out of all proportion to the value of any benefits involved, and so the plaintiff may be charged with contributory negligence for unreasonably choosing to confront the risk. And where there is a reason-

ably safe alternative open, the plaintiff's choice of the dangerous way is a free one, and may amount to assumption of risk, negligence or both.

(Footnotes omitted.)

The rule set forth in Harper & James and by *Prosser and Keeton* has been adopted in Maryland in situations when the plaintiff acts to save his own or someone else's life. *See Scott v. John H. Hampshire, Inc.*, 246 Md. 171, 175, 227 A.2d 751 (1967); *Maryland State Fair and Agric. Soc'y v. Lee*, 29 Md.App. 374, 388, 348 A.2d 44 (1975). Both *Scott v. John H. Hampshire, Inc.* and *Lee* are distinguishable from the case at hand, however, because neither deals with attempts to save property.

In *Scott v. John H. Hampshire, Inc.*, the plaintiff, an ironworker, noticed that steel was being unloaded from a truck in a dangerous manner. *See* 246 Md. at 174, 227 A.2d 751. He left a place of safety and went to within twenty feet of the unloading operation and commanded that everyone "stop what you're doing." *Id.* The foreman was then warned by the plaintiff that it was dangerous to wrap the steel with the type of chain that was being used and that someone was likely to get hurt. *See id.* The foreman temporized by saying he would move the steel a little further and would then stop, but as he again moved the steel, the chain broke and struck plaintiff on the head. *See id.* The ironworker sued John H. Hampshire, Inc.—the owner of the steel. At the end of the plaintiff's case, the trial court ruled that the plaintiff was guilty of contributory negligence and had assumed the risk of injury; the court therefore directed a verdict in favor of John H. Hampshire, Inc. *See id.* The Court of Appeals reversed, saying:

So regardless of whether the defense was contributory negligence or assumption of risk, neither defense is applicable in this case where the conduct of the defendant appears to have created such a situation as to justify if not to compel the plaintiff to undergo the risk of being injured in order to warn others and avert their harm. *People's Drug Stores v.*

*Windham*, 178 Md. 172, 12 A.2d 532 (1940); *Restatement of Torts*, § 893. Also see *Green v. Standard Wholesale Phosphate and Acid Works*, 29 F.2d 746 (D.Md.1928); *Dunagan v. Appalachian Power Co.*, 11 F.2d 65 (4th Cir.1926); *Restatement of Torts 2d*, § 472.

This Court, in recognizing the principle that it is commendable to save life, has consistently held that a person who endeavors to avert the consequences of the negligence of another person, by an act which is dangerous but not reckless, is not precluded from recovering damages for injury suffered as a consequence of having interposed. *Maryland Steel Co. v. Marney*, 88 Md. 482, 42 A. 60 (1898); *American Express Co. v. Terry*, 126 Md. 254, 94 A. 1026 (1915); *State use of Dove v. M. & C.C. of Baltimore*, 141 Md. 344, 118 A. 753 (1922); *Lashley v. Dawson*, 162 Md. 549, 160 A. 738 (1932). In *Marney* it was said (at p. 498, 42 A. 60) that *the "law has so high a regard for human life that it will not impute negligence to an effort to preserve it, unless made under such circumstances as to constitute rashness."* The same statement of law was cited with approval in *Terry* and *Dove*. And in *Lashley* it was also said (at p. 564, 160 A. 738) that "the law measures acts done under the spur and stress of sudden emergencies . . ., when done for the purpose of averting serious or even fatal consequences to others, with more indulgence than when they are impelled by no such motive." In a case such as this, the incurring of danger was not negligence *per se* and the question of whether the giving of the warning was justified is ordinarily one for the jury to decide. *State use of Dove v. M. & C.C. of Baltimore, supra.*

*Id.* at 175–76, 227 A.2d 751 (emphasis added). In the emphasized portion of the above quote, the Court succinctly set forth the rescue doctrine. *See Furka v. Great Lakes Dredge & Dock Co.*, 755 F.2d 1085, 1088 (4th Cir.1985) (stating that *Scott v. John H. Hampshire, Inc.*, accurately recited the rescue doctrine).

In *Lee*, we held that the rescue doctrine applies to cases in which assumption of risk was raised as a defense. *See* 29

Md.App. at 387, 348 A.2d 44. The facts in *Lee* were uncompli-
cated. Aimee Button, an adult, was thrown from a horse at
Timonium Race Track, struck her head, and died as a result.
*See id.* at 376, 348 A.2d 44. Aimee's mother sued the owner of
the track for damages resulting from Aimee's death. *See id.*
at 377, 348 A.2d 44. The injury to Aimee occurred when she
attempted to enter the track; a gust of wind blew sand and
dirt her way and frightened her horse, causing it to back off
the track. *See id.* at 376, 348 A.2d 44. Aimee decided to re-
enter the track, and as she did so, the horse again became
frightened. *See id.* The horse backed around erratically and
next bolted out a gate toward an asphalt surface. *See id.*
When the horse's hooves hit the asphalt, the steed slipped due
to sand on the surface. *See id.* The animal then panicked
and ran toward a stone wall, which it jumped; as it jumped,
Aimee fell and struck her head on the wall. *See id.*

In *Lee,* Timonium contended, *inter alia,* that Aimee knew
and appreciated the dangerous condition of the track and
therefore assumed the risk of injury. *See id.* at 378, 348 A.2d
44. It contended that the court erred in giving an emergency
instruction [2] because the emergency doctrine, according to
Timonium, did not apply if the defense was that the plaintiff
assumed the risk. *See id.* at 387, 348 A.2d 44. In holding that
the emergency doctrine did apply to cases when assumption of
the risk was raised as a defense, Judge Eldridge, for this
Court, noted that the Court of Appeals had said in *Scott v.
John H. Hampshire, Inc.* that the defense of assumption of
risk is inapplicable if the actions of the defendant appear to
create a situation that would "justify, if not compel the plain-
tiff to undergo the risk of being injured in order to warn

---

2. The emergency instruction was:

You are further instructed when an individual is confronted by an
emergency situation, the conduct of the person involved in the
emergency is to be judged with respect to a standard of care by
considering how a reasonable person would react under similar
circumstances, and an error of judgment, if reasonable under the
circumstances, is not contributory negligence or assumption of the
risk.

*Lee,* 29 Md.App. at 387, 348 A.2d 44.

others and avert their harm." *Lee*, 29 Md.App. at 388, 348 A.2d 44 (quoting *Scott v. John H. Hampshire, Inc.*, 246 Md. at 175, 227 A.2d 751). From this, the Court reasoned:

> If the doctrine of assumption of risk is inapplicable where the plaintiff tries to avert harm caused to others by defendant's negligence, then *a fortiori* it has no application where the plaintiff, confronted with an emergency created by the defendant, attempts to save himself, unless under the circumstances he acts unreasonably.

*Id.*

The general rule outside of Maryland appears to be that the rescue doctrine is applicable when the plaintiff, confronted with an emergency caused by the defendant's negligence, is injured when attempting to save property. In Joel E. Smith, Annotation, *Liability of One Negligently Causing Fire for Injuries Sustained by Person Other Than Firefighters in Attempt to Control Fire or to Save Life or Property*, 91 A.L.R.3d 1202 (1979), the annotator says:

> Thus, aside from issues of duty and breach of duty on the part of one alleged to have negligently caused a fire, the courts have for the most part been concerned with the so-called *rescue doctrine* in determining whether a recovery was allowable for personal injury to or the death of a person other than a fireman who sustained the injury or death in an attempt to control a fire or to save life or property from a fire. In general, this rescue doctrine may be applied either to establish that the defendant's negligence in creating the peril which induced the injured person to attempt to rescue another or to protect property in danger was the proximate cause of the injury for which recovery is sought, or to relieve a person who was injured while carrying out a rescue attempt from the bar of the defense of contributory negligence or of assumption of risk.

> The dual purpose of this rescue doctrine has been reflected in those cases within the scope of the present annotation. Thus, liability of a defendant negligently causing a fire has been held established or supportable in

actions to recover for personal injury to or the death of a person attempting to save the life of another, *or attempting to protect his own property or the property of another from the fire, the courts generally concluding that the defendant's negligence was the proximate cause of the injury sustained in the rescue attempt.* In addition, one negligently causing a fire has been held liable or subject to liability for personal injuries to or death of a person resulting from an attempt to save the life of another or to protect his own property or the property of another where the courts have concluded that a finding of no contributory negligence or assumption of risk was, under the circumstances, at least supportable.

*Id.* at 1205–06 (footnotes omitted) (emphasis added).

The Restatement (Second) of Torts § 496E (1965) adopts the general rule just quoted. As expressed in the Restatement:

§ 496 E. Necessity of Voluntary Assumption

(1) A plaintiff does not assume a risk of harm unless he voluntarily accepts the risk.

(2) The plaintiff's acceptance of a risk is not voluntary if the defendant's tortious conduct has left him no reasonable alternative course of conduct in order to

(a) avert harm to himself or another, or

(b) exercise or protect a right or privilege of which the defendant has no right to deprive him.

The section is followed by a useful example:

A Railroad negligently sets a fire on its right of way, which burns toward B's house. In order to save the house[,] B attempts to extinguish the fire, although he knows that there is a risk that he may be burned in doing so. B does not assume the risk.

*Id..* cmt. C, illus. 2. The Court of Appeals endorsed the rule set forth in § 496 E in *Martin,* 348 Md. at 93, 702 A.2d 730.

While there are numerous out-of-state cases in which the Court has adopted the rule set forth in § 496 E, the case most closely on point is *VanCollom v. Johnson,* 228 Va. 103, 319 S.E.2d 745 (Va.1984). In *VanCollom,* the plaintiff was visiting

her 82 year old mother. *See id.* at 746. While fixing break-fast, the plaintiff's mother inadvertently turned on a heating element underneath a frying pan filled with grease; plaintiff was sitting with her mother in the next room when she discovered the resulting fire. *See id.* The flames from the grease fire extended to the kitchen ceiling. *See id.* The mother followed her daughter into the kitchen and stood "petrified" while plaintiff got a towel, wrapped it around the frying pan handle, grabbed the flaming pan, ran through a garage attached to the kitchen and out the garage door, and threw the pan into the yard. *See id.* "Apparently, the plaintiff received her burns when a wind gust blew the flames towards her, as she was passing through the open garage." *Id.* A successful claim was brought by the plaintiff against her mother. *See id.*

In *VanCollom,* the Virginia Supreme Court ruled that the trial judge was correct when he refused to submit the issue of assumption of risk to the jury. The Court explained:

> The plaintiff was forced to react, in a split second, to dispose of the source of the fire, thereby preventing injury to her mother and preventing damage to the dwelling as well as its contents. Certainly, there was an alternative course of conduct available to the plaintiff. She could have disregard-ed the blaze and ushered her mother to safety outdoors to await arrival of firemen. Nevertheless, that was not a viable alternative that afforded full protection to person and property because, while avoiding injury to the home's occu-pants, that choice could have resulted in substantial damage to property or complete destruction of the residence. Thus, paraphrasing the Restatement, the plaintiff's choice was not voluntary, as a matter of law, because the alternative course of conduct was one which she could not reasonably be required to accept. Stated differently, the plaintiff was compelled by a special exigency, making her choice not voluntary.

*Id.* at 747.

In the case at hand, Mr. Scott's actions were very similar to those of the plaintiff in *VanCollom.* Mr. Scott told

the jury that he took the action he did because he believed that if he did not act the house would burn down. He also explained:

> Based on the responsibility that was turned over to me. I heard a frightened woman crying for help. Her house was on fire. I was in the basement doing my work and I ran upstairs, and she did not offer any help as far as giving me something to put the fire out with or even call [sic] the fire department or whatever to put that fire out. She asked me to help her.

It is true, as it was in *VanCollom,* that the plaintiff could have ushered everyone out of the house and let the fire rage. But, if Mr. Scott had done so, it is likely that the fire, which had already blackened the kitchen cabinets and had reached and "curled over" the ceiling, would have seriously damaged Ms. Boddie's home. "Danger invites rescue." *Wagner v. International Ry. Co.,* 232 N.Y. 176, 133 N.E. 437, 437 (N.Y. 1921). And, Ms. Boddie pleaded with Mr. Scott for help. As Justice Cardozo once said:

> The cry of distress is the summons to relief. The law does not ignore these reactions of the mind in tracing conduct to its consequences. It recognizes them as normal.

*Id.*

When Mr. Scott decided to pick up the frying pan and take it outside, he was attempting to rescue appellant's property. Appellant's negligent actions put Mr. Scott to a choice of evils—"a species of duress." *Martin,* 348 Md. at 93, 702 A.2d 730 (quoting *Prosser & Keeton* § 68, at 490–91). Taking the evidence in the light most favorable to Mr. Scott, Mr. Scott did not voluntarily assume the risk of injury when he picked up the frying pan because there was sufficient evidence from which the jury could find that (1) he was attempting to avert harm to the defendant's property caused by defendant's negligence and (2) he did not act unreasonably [3] under the emer-

---

**3.** Under some circumstances, a plaintiff's action might, of course, be unreasonable as a matter of law, e.g., if a man rushed into a burning building to save his hat. *See Prosser & Keeton* § 68 at 481.

gency conditions he faced.[4]

In addition to contending that appellee assumed the risk of injury when he first lifted the frying pan off the stove, appellant contends that appellee again assumed the risk of injury when he "made an ill-advised decision ... [to throw] voluntarily ... the pan from the hallway out an open door." In hindsight, the decision may seem "ill advised." But immediately before he threw the pan, Mr. Scott faced a Hobson's choice: He could continue to hold the pan and be engulfed in flames, or he could throw the pan out the door and risk getting scalded by the grease. Again, as pointed out in *Martin,* when the defendant's actions put plaintiff in a position where the plaintiff must make such a choice, the choice made is not voluntary. *See Martin,* 348 Md. at 93, 702 A.2d 730.

**JUDGMENT AFFIRMED; COST TO BE PAID BY APPELLANT.**

---

4. Appellant's counsel said at oral argument that a safe alternative was to have picked up the pan and placed it in the sink. Appellee's counsel responded that it would not have been safe to put a six foot high grease fire in the sink because the proof at trial was that curtains hung next to the sink. We agree.