17458

Mrs. Blanche C. BROWN, Administratrix of the Estate of James C. Brown, Deceased, Appellant, v. NATIONAL OIL COMPANY, a Corporation, and Herbert Taylor, Respondents

(105 S. E. (2d) 81)

*Messrs. Odom, Bostick & Nolen,* of Spartanburg, *for Appellant,*

*Messrs. Carlisle, Brown & Carlisle,* of Spartanburg, *for Respondent,*

Aug. 5, 1958.

OXNER, Justice.

This action was brought in February, 1955, by James C. Brown against National Oil Company and Herbert Taylor, one of its tank truck drivers and salesmen, to recover damages resulting from a fire alleged to have been caused by the negligence of the defendants. Brown died on April 24, 1955. Thereafter his widow, Mrs. Blanche C. Brown, was appointed administratrix of his estate and an appropriate order entered substituting her as party plaintiff. The case was tried in January, 1956. Timely motions by defendants for a nonsuit and a directed verdict were refused. The jury returned a verdict in favor of the plaintiff against defendant National Oil Company alone for $15,000.00 actual damages, thereby absolving the defendant Herbert Taylor. (The trial Judge held that there was no evidence to support a verdict for punitive damages.) Thereafter the Court granted a motion by the National Oil Company for judgment *non obstante veredicto* upon the ground that there was no evidence of negligence on the part of the National Oil Company apart from that of defendant Taylor. From this order, plaintiff has appealed.

It is well settled that where a principal and agent or master and servant are jointly sued and the only evidence of negligence relates to acts committed by the agent or servant and the verdict of the jury exonerates the latter, a verdict against the principal or master alone can-

not stand. *Chapman-Storm Lumber Corp. v. Minnesota-South Carolina Land & Timber Co.,* 183 S. C. 31, 190 S. E. 117; *Carter v. Atlantic Coast Line Railroad Co.,* 194 S. C. 494, 10 S. E. (2d) 17; *LeGette v. Carolina Butane Gas Co.,* 210 S. C. 542, 43 S. E. (2d) 472. The question presented, therefore, is whether there is any evidence of actionable negligence in this case apart from that alleged to have been committed by Taylor. If so, there was error in granting the motion.

On the morning of August 3, 1954, a combination filling station and country store operated by plaintiff's intestate was destroyed by fire. This business was located at Pauline, a small community about ten miles south of Spartanburg on S. C. Highway No. 56. Plaintiff and his family lived in the rear of the store. The property was owned by one W. G. Smith who leased it to the National Oil Company. In 1945 the Oil Company sublet the premises, including the gasoline tanks and equipment, to plaintiff's intestate. The service station equipment was kept in repair by the Oil Company. The pumps were mounted on a concrete "island" in front of the store. They consisted of two electrically operated gasoline pumps, one for high test and the other for regular gas, a hand pump for high test gas, referred to as a "visible pump", and an electrically operated kerosene pump. The visible pump had a round glass container at the top with a capacity of ten gallons and was only used when the electric current was off. There was a concrete apron between the pumps and the front door of the store ample in width to permit a motor vehicle to be driven thereon. A roof or shed extending from the store building furnished shelter for the apron and the gasoline equipment on the island.

All gasoline used at this service station was purchased from the Oil Company. Deliveries were made about twice a week. Around 11:00 A. M., on August 3, 1954, a clear, hot day, defendant Herbert Taylor drove one of the Oil Company's tank trucks under the shed to deliver gasoline. When he had filled the underground tank holding regular

gasoline, the truck was moved a short distance in order to fill the high test underground tank. After connecting the hose with the "filler pipe" and opening the valve to let the gas in, Taylor sat down in a chair about 12 feet from the filler pipe and commenced making out his tickets. An employee of plaintiff's intestate, Francis Johnson, was on top of the truck checking the gasoline delivery. A son, Jimmy Brown, was standing near the back of the truck. Alfred West, a by-stander, who was an occasional customer and a frequent visitor at the store, was sitting on the concrete island about three or four feet from the filler pipe with his back against the visible pump. James C. Brown and his wife were inside the store. While the gasoline was flowing into the high test tank, West struck a match to light a cigarette. Taylor undertook to stop him but it was too late. This ignited gasoline fumes or vapor concentrated under the shed. There was immediately, according to Taylor, "a big flash," "all the fumes in the air they flashed." All those in front of the store ran. The fire soon settled around the filler pipe. Taylor returned and got a fire extinguisher from the truck for the purpose of extinguishing this blaze. He says he told the others to "leave it alone and I will put it out." According to plaintiff's testimony, Taylor was not able to operate the fire extinguisher. Plaintiff's intestate, who had run out of the store when someone hollered "fire", then took it and was also unsuccessful in getting it to work. About this time West pulled the hose from the filler pipe with the gasoline flowing. This resulted in a general fire all over the front of the place. In the excitement West got in the truck and with the gasoline flowing drove it off the premises and stopped in a nearby field. Several persons working at a place of business located nearby then came over with fire extinguishers, but it was too late to do anything with the fire. All the contents of the store were destroyed.

We shall now discuss the evidence relating to negligence. The record clearly discloses negligence on the part of Taylor in failing to stand at the rear of the

truck so as to enable him to cut off the gasoline in an emergency. But this evidence must be disregarded in view of the fact that the jury found in his favor. The verdict against National Oil alone can be sustained only if there is evidence of negligence apart from any act of Taylor. Plaintiff relies on several specification of negligence in the complaint directed solely to the Oil Company, but the only one we need to consider is the allegation of negligence "in failing to have the underground tank vented, or in having same improperly vented."

The expert witnesses for the plaintiff testified that it was extremely hazardous to operate a filling station which had no vent—a pipe attached to the underground tank for the escape of air and gasoline fumes. They said without this means of escape fumes will concentrate around the filler pipe when gasoline is poured into the underground tank, and that without a vent there is also the likelihood of a "blowback." Their testimony was further to the effect that these vent pipes should be placed on the back or side of the building away from traffic and from doors and windows and should extend at least ten feet above the ground so as to eliminate the risk of being ignited. Unless so placed there is considerable danger of ignition in areas frequented by the public.

Several witnesses for plaintiff testified there were no vents at this filling station. The Oil Company contends that the pipe on the visible pump through which surplus gasoline was returned to the underground tank functioned as a vent pipe and that there was also a hole in the top of the glass receptacle which allowed the escape of air and gasoline fumes, but one of the expert witnesses testified that neither of these was sufficient as a vent. One of the Oil Company's employees testified that about six months before the fire, he was instructed by his superior officer to install two electric gasoline pumps at this station and to "go down in there where that valve comes out on that visible pump and put a practical vent in there like was supposed to be in there." This is a clear recognition of the inadequacy of the vents at

this filling station. It is also of interest to note that when new pumps were installed after the fire, the service station was equipped with vents in accordance with the standard which plaintiff's witnesses testified was essential to safety in the operation of a filling station.

It is argued that neither the lack of vents nor improper vents caused the concentration of fumes under the shed. Counsel for the Oil Company call attention to the fact that although there had previously been numerous instances of "blowbacks" when filling the underground tanks, there is no evidence of a "blowback" occurring on the morning of the fire. They further point out that according to the experts some fumes escape around the filler pipe even if there are proper vents. But we think it could be reasonably inferred from the testimony that if proper vents have been installed, there would not have been an appreciable amount of fumes on the morning of the fire. The experts said that only a negligible amount escapes around the filler pipe when there are proper vents. The fact that there was a "big" flash causing everyone to run indicates that there was a rather heavy concentration of fumes under the shed.

We conclude that the jury could have reasonably found negligence on the part of the Oil Company in failing to provide adequate vents thereby causing a heavy concentration of gas fumes under the shed of this service station. The next question is whether it can be reasonably inferred that such negligence was a proximate cause of the fire. The contention of the Oil Company is that the striking of the match by West was an intervening cause and that the chain of causation was further broken by his act in pulling the nozzle of the hose from the filler pipe, thereby converting, according to the Oil Company, a small harmless blaze which could have been easily extinguished into a general fire which could not be controlled.

The general principles are well settled, although their application frequently presents considerable difficulty. In

*Pfaehler v. Ten Cent Taxi Co.,* 198 S. C. 476, 18 S. E. (2d) 331, 335, the Court quoted the following with approval:

"It is universally agreed that the mere fact that the intervention of a responsible human being can be traced between the defendant's wrongful act and the injury complained of will not absolve him. On the contrary the general rule is that whoever does a wrongful act is answerable for all the consequences that may ensue in the ordinary course of events, though such consequences are immediately and directly brought about by an intervening cause, if such intervening cause was set in motion by the original wrongdoer, or was in reality only a condition on or through which the negligent act operated to produce the injurious result. Any number of causes and effects may intervene between the first wrongful cause and the final injurious consequence; and if they are such as might, with reasonable diligence have been foreseen, the last result, as well as the first, and every intermediate result is to be considered in law as the proximate result of the first wrongful cause. The question always is, was there any unbroken connection between the wrongful act and the injury, a continuous operation? Did the facts constitute a succession of events, so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury? The test is to be found in the probable injurious consequences which were to be anticipated, not in the number of subsequent events and agencies which might arise."

It is equally well settled that to establish liability, it is not necessary that the person charged with negligence should have contemplated the particular event which occurred. It is sufficient that he should have foreseen that his negligence "would probably result in injury of some kind to someone. The wrongdoer may be held liable for anything which, after the injury is complete, appears to have been a natural and probable consequence of his negligence." *Hicklin v. Jeff Hunt Machinery Co.,* 226 S. C.

484, 85 S. E. (2d) 739, 743. "If the actor's conduct is a substantial factor in bringing about harm to another, the fact that the actor neither foresaw nor should have foreseen the extent of the harm or the manner in which it occurred does not prevent him from being liable." Restatement, Torts, Section 435.

In 38 Am. Jur., Negligence, Section 64, it is stated: "The rule is that when an injury occurs through the concurrent negligence of two persons, and it would not have happened in the absence of the negligence of either person, the negligence of each of the wrongdoers will be deemed a proximate cause of the injury, although they may have acted independently of one another; and both are answerable, jointly or severally, to the same extent as though the injury were caused by his negligence alone, without reference to which one was guilty of the last act of negligence."

The authorities agree that if a person's negligence is a proximate cause of an injury to another, the fact that the negligence of a third party concurred with his negligence does not relieve him from liability. *Ayers v. Atlantic Greyhound Corp.*, 208 S. C. 267, 37 S. E. (2d) 737. This principle is stated in Restatement of Torts, Section 447, as follows:

"The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if

"(a) the actor at the time of his negligent conduct should have realized that a third person might so act, or

"(b) a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted, or

"(c) the intervening act is a normal response to a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent."

Application of the principles just discussed will be found in a number of our decisions. We shall only mention a few of them.

In *Tobias v. Carolina Power & Light Co.,* 190 S. C. 181, 2 S. E. (2d) 686, a pedestrian on the highway was struck by a passing motorist and thrown against exposed guy wires of an electric light pole installed and maintained by the Power Company in the center of the highway. It was held that if the Power Company was negligent in installing and maintaining the pole, it could not escape liability on the theory that the negligence of the motorist was an efficient, intervening cause.

In *Tate v. Claussen-Lawrence Construction Co.,* 168 S. C. 481, 167 S. E. 826, suit was brought by the owner of a garage and service station against a construction company and the Gulf Oil Company to recover damages for the destruction of his building by fire. The construction company was engaged in paving a highway running by the service station. The highway was torn up and the construction company set up a board with a warning that the road was closed to travel. During the late afternoon of the day of the fire the construction company placed at the foot of the barricade a flambeau which was only ten or twelve feet from the filling station. Shortly thereafter the driver of a truck of the Gulf Oil Company drove around this barricade and into the filling station for the purpose of filling the underground tank. While the gasoline was being poured into the underground tank from the truck, gas vapors came in contact with the burning flambeau and an explosion followed which ignited the gas in the funnel. The driver of the truck then jerked the hose from the funnel, waved it about excitedly, scattering gas on the building, causing the fire to spread and as a result the building was destroyed. Negligence on the part of the truck driver was not seriously contested. The construction company contended that it was not negligent because it could not have anticipated the acts of the truck driver and, further, that the negligence of this driver was an

intervening, independent act breaking the chain of causation. The Court refused to sustain these contentions and upheld a judgment against both the construction company and Gulf.

We now turn to several cases from other jurisdictions involving facts similar in many respects to those in the instant case.

In *Robert R. Walker, Inc., v. Burgdorf,* 150 Tex. 603, 244 S. W. (2d) 506, 508, plaintiff brought suit against the owner of a filling station and a transport company for damages to its truck, trailer and cargo resulting from a fire at the filling station. Plaintiff's truck was driven into the service station for the purpose of draining the gasoline tank because water was believed to have accumulated therein. While several employees of the station were in the process of draining the gasoline and water from the tank and washing it toward the sewer, a driver of a truck of the transport company, who had just had his truck refueled and serviced, walked up to the scene to watch the draining process and while standing there lighted a cigarette. He was immediately warned by the driver of plaintiff's truck to be careful about lighting matches around gasoline, whereupon the driver of the transport truck laughed and said, "you know that gasoline and water will not burn," and struck a match and deliberately threw the lighted match into the stream of gasoline and water, which mixture immediately ignited and burst into flames, damaging the plaintiff's truck. It was contended by the owner of the station that even if his employees were negligent, such was not the proximate cause of the damage in view of the intervening act of the driver of the transport truck. The Court overruled this contention and held the owner liable. It was stated: "The filling station in question was being operated in the City of Texarkana, and cars were being constantly driven in and out for service, while people were constantly passing, and that there was danger of gasoline becoming ignited from several sources was quite obvious. From those who handle explosives, combustible gases, gasoline, petroleum, electricity, and similar dangerous

commodities, the law exacts a duty to protect the public which is proportionate to and commensurate with the dangers involved."

In *Mudrich v. Standard Oil Co.,* 153 Ohio St. 31, 90 N. E. (2d) 859, defendant's truck was driven to a combination store and filling station to deliver gas. While the driver was engaged in filling one of the underground tanks, gasoline overflowed and a quantity of it drained toward the rear of the premises where it formed two pools, one about 14 inches in diameter and the other 6 inches. Several hours later plaintiff and a friend of his, both small boys, came to the filling station and started playing. Finally, one of them went into the store, procured some matches, came out and lighted the pools of gasoline which had been left standing by the driver of defendant's truck. When they flamed up, plaintiff helped put out the smaller fire by placing mud upon it, and while another boy was looking for something to extinguish the larger blaze, plaintiff, in order to put it out, walked toward it, started to run and jumped into it. As a result, he was seriously burned. The defendant, among other defenses, contended that any negligence on the part of its driver in spilling the gasoline was not the proximate cause of the injury but it was caused by the intervening act of plaintiff's friend in setting fire to the pools and of plaintiff in jumping into a burning pool for the purpose of extinguishing it. This contention was overruled and judgment against the defendant sustained.

In *Standard Oil Co. of Kentucky v. Evans,* 154 Miss. 475, 122 So. 735, 736, the Court said that the operator of a filling station was "charged with the knowledge that gasoline is highly inflammable, and that persons in and around automobiles striking matches for the purpose of lighting cigars, pipes, or cigarettes may cause it to ignite." In *Koelsch v. Philadelphia Co.,* 152 Pa. 335, 25 A. 522, 18 L. R. A. 759, it was held that if the presence of gas in a cellar is due to the negligence of a gas company and an explosion results from the negligent striking of a match by a stranger, the party

injured may recover against either the gas company or the stranger or against both, at his election.

Under the foregoing authorities we cannot say as a matter of law that the chain of causation was broken by the acts of West. If, as we have concluded, there was evidence of negligence on the part of the Oil Company in causing gasoline vapors or fumes to accumulate under the shed, it was a question of fact for determination by the jury as to whether such negligence was a concurring proximate cause of the fire. It could be reasonably foreseen that there might be smoking in front of this store. The act of West in pulling the nozzle of the hose from the filler pipe may have been a negligent one for which he could be held liable, but we cannot say as a matter of law that under the circumstances then existing his conduct was wanton or foolhardy. We think the quality of his acts was for the jury. Under the impulse of danger, he was undertaking to render aid. As stated by Justice Cardozo in *Wagner v. International Railway Co.,* 232 N. Y. 176, 133 N. E. 437, 19 A. L. R. 1: "Danger invites rescue. The cry of distress is the summons to relief. The law does not ignore these reactions of the mind. In tracing conduct to its consequences it recognizes them as normal." Also, see *Thompson v. Seaboard Air Line Ry.,* 81 S. C. 333, 62 S. E. 396, 20 L. R. A., N. S., 426. It is of interest to note that the act of West in disconnecting the hose from the filler pipe was similar to the act of the truck driver in *Tate v. Claussen-Lawrence Construction Co., supra,* 168 S. C. 481, 167 S. E. 826.

We think *Moody v. Gulf Refining Co.,* 142 Tenn. 280, 218 S. W. 817, 8 A. L. R. 1243, cited in respondent's brief, is distinguishable on the facts. Incidentally, it seems to be in conflict with *Mudrich v. Standard Oil Co., supra,* 153 Ohio St. 31, 90 N. E. (2d) 859.

The next contention is that the Oil Company would have removed the visible tank prior to the fire had not plaintiff's intestate objected. It appears at the time Brown took over

the station in 1945, it had two pumps—the visible pump and an electrically operated pump. An employee of the Oil Company testified that about six months or a year prior to the fire, while installing two electric pumps at this station, he undertook, at the direction of the Oil Company, to take up the visible pump but stopped the work after Brown objected to its removal. Brown having died prior to the trial, there was no way for plaintiff to reply to this testimony. Its credibility was for the jury. Moreover, it is rather clear from the testimony of this witness that the objection of Brown was not to installation of proper vents but the fact that he would be deprived of a hand pump for use when the electric power was off.

Lastly, it is contended that since the relationship between the parties was that of landlord and tenant, there was no responsibility on the part of the Oil Company for any defect in the gasoline equipment. It is not clear whether this question was raised in the Court below. Assuming that it is properly before us, there is no merit in it. The testimony abundantly shows the equipment was furnished by the Oil Company and that it undertook to maintain and keep it in good repair. See *Cooper v. Graham*, 231 S. C. 404, 98 S. E. (2d) 843.

The order granting the Oil Company's motion for judgment *non obstante veredicto* is reversed, and the case is remanded for entry of judgment in favor of the plaintiff's intestate in accordance with the verdict of the jury.

STUKES, C. J., and TAYLOR, LEGGE and MOSS, JJ., concur.