611 F.2d 71
 53 A.L.R.Fed. 627
 Peter HLODAN, Administrator of the Estate of William James
Hlodan, deceased, Plaintiff-Appellee, Cross-Appellant,
v.
OHIO BARGE LINE, INC., a corporation, Defendant-Appellant,
Cross-Appellee,
Warfield Towing Service, Inc., a corporation, Defendant-Appellant.
 No. 77-2326.
 United States Court of Appeals,
Fifth Circuit.
 Jan. 28, 1980.
 
 Frank S. Thackston, Jr., Greenville, Miss., James Daigle, New Orleans, La., Ernest Lane, III, Joel J. Henderson, Greenville, Miss., for defendant-appellant, cross-appellee.
 Cohn, Carr, Korein, Kunin, Schlichter & Brennan, Jerome J. Schlichter, David J. Letvin, East St. Louis, Ill., for plaintiff-appellee, cross-appellant.
 Appeal from the United States District Court for the Northern District of Mississippi.
 Before MORGAN, RONEY and GARZA, Circuit Judges.
 RONEY, Circuit Judge:
 
 
 1
 William Hlodan, a 20-year old deckhand employed by Ohio Barge Line, Inc. on the M/V STEEL LEADER, drowned when he attempted to rescue a Warfield Towing Service, Inc. deckhand who had fallen into the Mississippi River from a Warfield tug, the M/V JOHN K.
 
 
 2
 Hlodan's next of kin brought a wrongful death action against Ohio Barge Line, Hlodan's employer, and Warfield Towing, alleging negligence under the Jones Act against Ohio Barge Line, 46 U.S.C.A. § 688, and a general claim of negligence and unseaworthiness against both defendants, seeking damages for pecuniary loss, loss of support and companionship, and survival damages. In answer to special interrogatories, the jury found that Ohio Barge Line, Hlodan's employer, was negligent, that Hlodan himself was not contributorily negligent, and that both defendants, Ohio Barge Line and Warfield Towing, breached their warranties of seaworthiness to Hlodan. A general verdict of $200,000 was returned for Hlodan's survivors, which was reduced by the district judge to $151,000.
 
 
 3
 Defendants raise several issues on appeal: the district court's use of the words "extraordinary negligence" in defining for the jury the standard of Hlodan's conduct that would bar his recovery under the rescue doctrine; an erroneous finding by the jury of no contributory negligence, and improper instructions on that issue; improper nonpecuniary damages; and an unsupported award for decedent's conscious pain and suffering. Plaintiff attempts to cross-appeal the remittitur he accepted. There being no error, we affirm.
 
 
 4
 The M/V STEEL LEADER was owned and operated by defendant Ohio Barge Line. She was pushing a mixed tow of between 16 and 20 barges southbound on the Mississippi River. The M/V JOHN K, a small harbor tug, was in the process of removing a barge from the M/V STEEL LEADER's tow when Willie Dobbins, a deckhand on the JOHN K who had been drinking, fell into the river near midnight without his life jacket. The JOHN K's master radioed the STEEL LEADER's master, Captain Jackson, that his man was in the river.
 
 
 5
 Captain Jackson grabbed a megaphone, yelled to his men there was a man overboard from the JOHN K, and told them to attempt rescue. Hlodan and two other deckhands ran to a point on the barge approximately 15 feet from where Dobbins, his eyes rolled back and apparently in shock, was floundering in the water. Hlodan doffed his own life jacket, placed his wallet, wristwatch and other items from his pockets on the deck, and plunged into the eddy-laden Mississippi to save Dobbins. A good swimmer, Hlodan soon reached the nearly unconscious Dobbins, but Dobbins, a 230-pound man, grabbed at Hlodan's neck. A deckhand threw his life jacket to Hlodan, but it floated beyond Hlodan's grasp. Realizing he could not gain control of the incapacitated Dobbins, Hlodan wrested himself free and began to swim toward shore. Hlodan's body was found floating in the Mississippi the next morning. Dobbins likewise drowned in the Mississippi that night.
 
 
 6
 In the course of instructing the jury on the standard of conduct under the Jones Act that would prevent a rescuer from recovering for the negligence of others, the district court used the words "extraordinary negligence" in defining defendant's burden of showing Hlodan was contributorily negligent. Defendant argues that this instruction would permit recovery by Hlodan's survivors despite his own negligence, if defendant's proof did not meet the more onerous "extraordinary negligence" standard. Considering the charge as a whole, however, we find that the district court properly delineated the requirement for Hlodan's conduct under the rescue doctrine to be that of an "ordinarily prudent person under the circumstances." The perhaps inadvisable use of the word "extraordinary" did not leave the jury with the wrong impression as to the correct standard. Grigsby v. Coastal Marine Service, 412 F.2d 1011, 1022 (5th Cir. 1969), Cert. dismissed, 396 U.S. 1033, 90 S.Ct. 612, 24 L.Ed.2d 531 (1970).
 
 
 7
 Defendant Ohio Barge Line argues that Hlodan's jumping into the Mississippi without a life jacket amounted to prohibitive contributory negligence as a matter of law under the Jones Act. Thus defendant argues the district court's denial of a judgment notwithstanding the verdict or a new trial was error. There was a conflict in the testimony regarding whether Hlodan threw his life jacket to Dobbins, or simply deposited it on the deck of the barge before he attempted the rescue, although he apparently removed his socks, shoes and his shirt, which were under the life jacket, before jumping into the water. The record indicates Hlodan attempted rescue at his captain's directive, even though the ship's owner had never instructed the crew on rescue procedures. Furthermore, the STEEL LEADER's barges were not equipped with lifesaving equipment, and there was evidence that other equipment, including an intercom system that might have been used to alert other crew members of the situation, was inoperable. Defendant had the burden of proof on this issue. It was squarely presented to the jury. It was for the jury, not the court, to decide whether Hlodan acted as an ordinary prudent person should have acted under the emergency circumstances as shown by the evidence in this case. See Boeing Co. v. Shipman, 411 F.2d 365, 374 (5th Cir. 1969) (En banc ).
 
 
 8
 The district court refused a requested instruction that Hlodan was himself responsible for any condition of unseaworthiness on the M/V STEEL LEADER. General maritime law imposes a duty upon shipowners to provide a seaworthy vessel. Carlisle Packing Co. v. Sandanger, 259 U.S. 255, 42 S.Ct. 475, 66 L.Ed. 927 (1922). That duty is absolute, and is independent from the duty of reasonable care imposed by the Jones Act. Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 550, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960). Consequently, contributory negligence is not ordinarily a defense under a claim of unseaworthiness, but speaks only to the question of damages. See Socony-Vacuum Oil Co. v. Smith, 305 U.S. 424, 431, 59 S.Ct. 262, 83 L.Ed. 265 (1939). Where the seaman claiming a breach of the owner's warranty of seaworthiness himself is directly responsible to the owner for maintaining the vessel's seaworthiness, the jury has been held to be entitled to consider whether that fact should bar recovery. Reinhart v. United States, 457 F.2d 151, 152-153 (9th Cir. 1972). The district court here found that "Hlodan, as watchman, had no contractual duty to Ohio to be in charge of rescuing seamen falling off of vessels other than the M/V STEEL LEADER." There being no error in this finding, there was no error in the district court's refusal to give the requested instruction.
 
 
 9
 With respect to the damages awarded under each count of plaintiff's complaint, it is clear that nonpecuniary damages awarded Hlodan's survivors for his death would be proper under an unseaworthiness claim based on general maritime law. See Sea-Land Services, Inc. v. Gaudet, 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974); Moragne v. States Marine Lines, Inc., 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970). On the other hand, nonpecuniary damages would be improper under a Jones Act claim alone. Ivy v. Security Barge Lines, Inc., 606 F.2d 524, 529 (5th Cir. 1979) (En banc ). The question here is whether a Jones Act claim joined with a general maritime claim bars the award of nonpecuniary damages, where the cause of action arose out of an occurrence on inland waters. This Circuit has previously held the presence of a Jones Act claim would not bar Moragne -type nonpecuniary damages on a general maritime claim of unseaworthiness based upon an occurrence in territorial waters. Landry v. Two R. Drilling Co., 511 F.2d 138, 143 (5th Cir. 1975), On rehearing, 517 F.2d 675, 676. "The remedy created in Moragne for wrongful death obviously extends to deaths of Jones Act seamen in United States territorial waters." 517 F.2d at 676. See also Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960); Note, Ivy v. Security Barge Lines, Inc.: The Fifth Circuit Continues Higginbotham's Retreat, 25 Loyola L.Rev. 215, 219 n.38 (1979). Prompted by Mobil Oil Corp. v. Higginbotham, 436 U.S. 618, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978), the En banc Court recently considered anew the interface between the Jones Act and general maritime law, noting,The Jones Act remedy for negligence remains unaffected by either the rules governing damages recoverable for unseaworthiness in general maritime law or by changes in those rules.
 
 
 10
 Ivy v. Security Barge Lines, Inc., 606 F.2d at 528. The En banc Court stated in a footnote,
 
 
 11
 A seaman may, of course, join a claim for unseaworthiness under general maritime law with his Jones Act claim for negligence. We do not here reach the issue of whether after (Mobil Oil Corp. v. Higginbotham, 436 U.S. 618, 98 S.Ct. 2010, 56 L.Ed.2d 581) nonpecuniary damages may be recovered in such an action if unseaworthiness is found.
 
 
 12
 Ivy v. Security Barge Lines, Inc., 606 F.2d at 528 n.8.
 
 
 13
 Mobil Oil Corp. v. Higginbotham, 436 U.S. 618, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978), was a Death on the High Seas Act (DOHSA) case, concerning an accident 100 miles from the Louisiana shore. 46 U.S.C.A. §§ 761-767. The Court considered only the issue of whether, in addition to the strictly pecuniary damages available under DOHSA, See 46 U.S.C.A. § 762, a decedent's survivors may recover nonpecuniary damages for unseaworthiness under general maritime law as well. In holding that DOHSA provides the exclusive remedy for death on the high seas, and that consequently nonpecuniary damages are prohibited by the literal language of the statute, the Court expressly stated that Sea-Land Services, Inc. v. Gaudet, 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9, still applies to incidents occurring on coastal waters. Mobil Oil Corp. v. Higginbotham, 436 U.S. at 623, 98 S.Ct. 2010. Gaudet, a case involving death on territorial waters, permitted recovery for nonpecuniary loss under general maritime law, and established standards for measuring compensable damages in such actions. See 414 U.S. at 583-591, 94 S.Ct. 806. The district court in the present case measured damages according to the Gaudet standards.
 
 
 14
 We conclude, therefore, that Mobil Oil Corp. v. Higginbotham has no bearing upon this Circuit's rule that a Jones Act claim may be joined with a wrongful death claim for nonpecuniary damages based on general maritime law, where the incident does not arise on the high seas, and that nonpecuniary damages may be recovered under the unseaworthiness claim. See Ivy v. Security Barge Lines, Inc., 606 F.2d 529, 532-534 (Brown, C. J., dissenting); Landry v. Two R. Drilling Co., 511 F.2d 138, On rehearing, 517 F.2d 675. Fatal accidents on the high seas were provided a federal remedy under DOHSA. Moragne afforded a wrongful death remedy under general maritime law, so that similar accidents in territorial waters would not be subject to the varied, and sometimes nonexistent, remedies afforded by state wrongful death statutes. See Mobil Oil Corp. v. Higginbotham, 436 U.S. at 624 n.18, 98 S.Ct. 2010. That Congress has chosen to limit recoveries based on deaths on the high seas to pecuniary damages does not limit the primary purpose of Moragne, which is to ensure that survivors of seamen like William Hlodan who perish in state waters receive adequate compensation for their losses.
 
 
 15
 In this case the district court, in ruling that the $200,000 was excessive but denying the defendants' motion for a new trial conditioned upon plaintiff's acceptance of a remittitur, made separate awards under each cause of action, broken down as follows:
 
 
 16
 I. Pecuniary loss
 (a) Loss of support
 (1) Accrued $12,500.00
 (2) Future loss, discounted
 to present value 34,496.60
 -----------
 Total loss of support 46,996.60
 (b) Loss of services
 (1) Accrued 9,000.00
 (2) Future loss, discounted
 to present value 24,837.56
 -----------
 Total loss of services 33,837.56
 -----------
 Total pecuniary loss 80,834.16
 II. Non-pecuniary loss
 (a) Decedent's conscious pain
 and suffering 25,000.00
 (b) Loss of society (both parents) 45,000.00
 -----------
 Total non-pecuniary loss 70,000.00
 -----------
 TOTAL LOSS $150,834.16
 -----------
 
 
 17
 Plaintiff accepted the remittitur. We need not decide the effect if the district court had not made that division. We need only hold here that where the jury makes specific findings of liability on the separate causes of action, Jones Act negligence and general maritime unseaworthiness, and there is an allocation of damages to each, separate recovery is appropriate. This result is not altered by Mobil Oil Corp. v. Higginbotham, 436 U.S. 618, 98 S.Ct. 2010, 56 L.Ed.2d 581. See McAllister v. Magnolia Petroleum Co., 357 U.S. 221, 224, 78 S.Ct. 1201, 2 L.Ed.2d 1272 (1958).
 
 
 18
 The jury in this case returned a verdict of $200,000. The trial court ordered a new trial unless plaintiff accepted a reduction of $49,000 in the verdict. Hlodan accepted the reduced verdict instead of a new trial, "under protest." Judgment was entered on his behalf. Plaintiff now attempts to cross-appeal, contending the jury verdict should be reinstated. Plaintiff may not, however, appeal from a remittitur order he has accepted. Donovan v. Penn Shipping Co., 429 U.S. 648, 650, 97 S.Ct. 835, 51 L.Ed.2d 112 (1977); Keene v. International Union of Operating Engineers, Local 624, 569 F.2d 1375 (5th Cir. 1978).
 
 
 19
 Finally, defendants claim an allocation of $25,000 under general maritime law for William Hlodan's conscious pain and suffering before his death is unsupported by the evidence. The evidence showed that for some undetermined number of minutes before his death Hlodan was aware of his predicament, and that his death by drowning was not instantaneous. The survival claim was proper, and the evidence supports the award. See Gillespie v. United States Steel Corp., 379 U.S. 148, 156-158, 85 S.Ct. 308, 13 L.Ed.2d 199 (1964).
 
 
 20
 AFFIRMED.