**Deborah FURKA, Administratrix of the Estate of Paul Furka, deceased, Appellant,**

v.

**GREAT LAKES DREDGE & DOCK COMPANY, INC., Appellee.**

No. 83–1542.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 5, 1984.

Decided Feb. 26, 1985.

Leonard C. Jaques, Detroit, Mich. (Jaques Admiralty Law Firm, P.C., Detroit, Mich., on brief), for appellant.

Warren B. Daly, Jr., Baltimore, Md. (M. Hamilton Whitman, Jr., Ober, Kaler, Grimes & Shriver, Baltimore, Md., on brief), for appellee.

Before RUSSELL, PHILLIPS and WILKINSON, Circuit Judges.

WILKINSON, Circuit Judge:

This is an action brought for negligence under the Jones Act and for unseaworthiness under general maritime law involving an alleged rescue attempt by appellant's decedent of a fellow employee on the Chesapeake Bay. During that attempt, the would-be rescuer was swept by the waves from his boat and drowned. We hold that the trial court's failure to give a proper rescue charge to the jury constitutes plain error and requires reversal despite a failure of counsel to object to the charge in accordance with Fed.R.Civ.P. 51. We remand the case for a new trial in accordance with the guidelines set forth below.

Appellant Deborah Furka is the widow of Paul Furka ("Furka"), who was employed by appellee Great Lakes Dredge and Dock Company ("Great Lakes") as a surveyor on a large marine dike construction project at Hart and Miller Islands in the Chesapeake Bay near Baltimore. In addition to a hydraulic dredge and two crew boats, Great Lakes maintained a number of tugboats, scows, and Boston Whalers to perform various functions on and around the project. Furka was chief-of-party on a surveying team operating on a Boston Whaler.

On January 9, 1982, a day of increasingly rough weather and turbulent seas, one of the tugs, with scow attached, lost its rudder and its power and went adrift in the bay. The captain radioed to base, but exactly what he said is a matter of dispute. According to plaintiff, the message was a call to remove the scowman from his open boat, where he was cold and wet and "freezing to death." Defendant's evidence indicated that the captain suggested no emergency but merely requested assistance with moving the scow. At the time of the call, none of the larger boats was available to go to the disabled craft. Furka took his sixteen-foot Boston Whaler into the rough water to remove the scowman from the cold, but the stranded seaman refused to leave with him. Furka turned toward shore but shortly began taking on water. He radioed for help but was drowned before rescuers could reach him.[1]

Furka's widow brought this action against his employer, alleging negligence under the Jones Act, 46 U.S.C. § 688 (1982)[2] and the unseaworthiness of the Boston Whaler under general maritime law.[3] Great Lakes denied any immediacy to the tugboat captain's radio call for help

---

1. The tug captain and scowman were eventually picked up by the inspector's boat.

2. 46 U.S.C. § 688(a) provides, in relevant part: "Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury ... and in case of the death of any seaman as a result of any such personal injury the personal representative of such seaman may maintain an action for damages at law with the right of trial by jury...."

3. General maritime law imposes a duty upon shipowners to provide seaworthy vessels—that is, vessels reasonably fit for their intended use. This duty extends to the vessel itself, its equipment, and its crew. It is an absolute duty requiring no knowledge on the part of the shipowner and exists independently of the duty to exercise reasonable care under the Jones Act. *See Usner v. Luckenbach Overseas Corp.*, 400 U.S. 494, 91 S.Ct. 514, 27 L.Ed.2d 562 (1971); *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960).

and asserted contributory negligence as a limitation upon complete recovery.[4]

The jury found Furka to have been a seaman. It returned a verdict in favor of plaintiff on negligence and against plaintiff on the unseaworthiness of the Boston Whaler. It awarded damages for pecuniary loss of $1,200,000, but found Furka to have been 65% contributorily negligent. Judgment was thus entered for plaintiff in the amount of $420,000. From that verdict Mrs. Furka appealed.

## I

The submission to the jury of the question of Furka's contributory negligence without reference to the special context of rescue ignored the very premise upon which appellant's case was based. The instruction in this case failed to inform the jury that no contributory negligence may be inferred from a rescue attempt alone and further that no comparative fault may be assessed unless plaintiff's conduct was wanton or reckless.[5] As stated long ago by Justice Cardozo, "Danger invites rescue. The cry of distress is the summons to relief. The law does not ignore the reactions of the mind in tracing conduct to its consequences. It recognizes them as normal." *Wagner v. International Ry. Co.*, 232 N.Y. 176, 133 N.E. 437 (1921).

The common law doctrine of rescue may be succinctly stated: "[T]he law has so high a regard for human life that it will not impute negligence to an effort to preserve it, unless made under such circumstances as to constitute rashness." *Scott v. John H. Hampshire, Inc.*, 246 Md. 171, 227 A.2d 751, 753–754 (1967), *quoting Maryland Steel Co. v. Marney*, 88 Md. 482, 42 A. 60, 66 (1898). *See also Altamuro v. Milner Hotel, Inc.*, 540 F.Supp. 870 (E.D.Pa.1982); *Brown v. National Oil Co.*, 233 S.C. 345,

105 S.E.2d 81 (1958); *Andrews v. Appalachian Electric Power Co.*, 192 Va. 150, 63 S.E.2d 750 (1951). When confronted with an emergency, a rescuer "should not be charged with the consequences of errors of judgment resulting from the excitement and confusion of the moment...." *Corbin v. Philadelphia*, 195 Pa. 461, 45 A. 1070, 1074 (1900); *see also Rodgers v. Carter*, 266 N.C. 564, 146 S.E.2d 806, 810 (1966); Restatement (Second) of Torts § 470(1) (1965). In rescue, promptness may be prudence, and reflex may claim the seat of reason.

■ Whether or not there was a rescue attempt is, of course, a question for the jury. If the jury finds plaintiff engaged in a rescue, there must be evidence of wanton or reckless behavior on plaintiff's part before any fault may be assigned. This is the standard traditionally applied to the conduct of plaintiffs in rescue situations. *See, e.g., Scott v. John H. Hampshire, Inc.*, (standard of "dangerous but not reckless" behavior), 246 Md. 171, 227 A.2d 751, 753, *citing Maryland Steel Co. v. Marney*, 42 A.60, 66 ("rashness"); *Brown v. National Oil Co.* ("wanton or foolhardy"), 233 S.C. 345, 105 S.E.2d 81, 87; *Andrews v. Appalachian Electric Power Co.* ("rash" or "reckless"), 192 Va. 150, 63 S.E.2d 750, 757; *Wagner v. International Ry.* ("wanton"), 232 N.Y. 176, 133 N.E. 437, 438; *Corbin v. Philadelphia* ("rashness and imprudence"), 45 A. 1070, 1073.

We reject appellee's contention that these policies lose their force under the Jones Act, where the doctrine of comparative negligence applies damages proportionately. It is true that the "wanton and reckless" standard developed under the common law, where contributory negligence was a complete bar to recovery. In some comparative negligence jurisdictions,

---

**4.** Contributory negligence may not be asserted as a complete bar to recovery under either the Jones Act or an action for unseaworthiness, though it may be taken into account to mitigate damages. *Socony-Vacuum Co. v. Smith*, 305 U.S. 424, 59 S.Ct. 262, 83 L.Ed. 265 (1939).

**5.** The trial court simply instructed the jury: "Contributory negligence is a failure on the part of the plaintiff himself to use ordinary care under the circumstances for his own safety at the time and place in question.... The law requires that Paul Furka use ordinary care for his own safety. Failure to do so would be negligence on his part...."

not in admiralty, the wanton and reckless standard has thus been diluted. *See e.g., Cords v. Anderson*, 80 Wis.2d 525, 259 N.W.2d 672, 683 (1977); *Ryder Truck Rental, Inc. v. Korte*, 357 So.2d 228 (Fla. App.1978). We do not think that is the appropriate course here. Rather, we agree with the Fifth Circuit that "of all branches of jurisprudence, the admiralty must be the one most hospitable to the impulses of man and law to save life and limb and property." *Grigsby v. Coastal Marine Service of Texas, Inc.*, 412 F.2d 1011, 1021 (5th Cir. 1969), *cert. dismissed*, 396 U.S. 1033, 90 S.Ct. 612, 24 L.Ed.2d 531 (1970). *See also Hlodan v. Ohio Barge Line, Inc.*, 611 F.2d 71 (5th Cir.1980); *Asaro v. Parisi*, 297 F.2d 859 (1st Cir.), *cert. denied*, 370 U.S. 904, 82 S.Ct. 1250, 8 L.Ed.2d 400 (1962). The best traditions of seafaring men demand that we honor attempts to rescue, unless the rescuer acts beyond the bounds that even the exigencies of the moment would allow. The wanton and reckless standard reflects the value society places upon rescue as much as any desire to avoid a total defeat of recovery under common law. Law must encourage an environment where human instinct is not insular but responds to the plight of another in peril.

This was a rescue attempt that ended in tragedy. Paul Furka died. If Sal Sanzone, the seaman on the open scow, had entered the Boston Whaler with Furka, he might have perished, too. Some rescue attempts will involve the loss both of rescuer and victim. This does not displace the principles herein. Hazard inheres in the enterprise. A jury, assessing the situation at a time and place far removed, must give proper weight to the moment of peril and the humane instincts that prompted the response thereto.

## II

Appellee contends that the trial court's contributory negligence charge is not subject to question here because appellant failed to object to the charge as given, pursuant to Fed.R.Civ.P. 51.[6] Ordinarily this court will not consider issues not previously raised. *United States v. One 1971 Mercedes Benz*, 542 F.2d 912 (4th Cir.1976). However, if the error is "plain" and to ignore it would result in a denial of fundamental justice, it should be corrected. *United States v. Barge Shamrock*, 635 F.2d 1108, 1111 (4th Cir.1980), *cert. denied sub nom. Shell Oil Co. v. United States*, 454 U.S. 830, 102 S.Ct. 125, 70 L.Ed.2d 107 (1981). "Rules of practice and procedure are devised to promote the ends of justice, not to defeat them. A rigid and undeviating judicially declared practice under which courts of review would invariably and under all circumstances decline to consider all questions which had not previously been specifically urged would be out of harmony with this policy." *Hormel v. Helvering*, 312 U.S. 552, 557, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941). *See also* 9 C. Wright & A. Miller, Federal Practice and Procedure § 2558 at 672–675 (1971).

In the case before us, the call to rescue and its attendant circumstances were the soul of appellant's case. Her evidence was adduced to show that had it not been for the perceived need for assistance, Furka would never have set out on the turbulent bay in a sixteen-foot boat. Under the rescue doctrine, she was entitled to a special instruction regarding these circumstances. This court has found plain error requiring reversal where an instruction "plainly misstated fundamentally controlling substantive principles governing ... [the] right to recover." *Miller v. Premier Corp.*, 608 F.2d 973, 983 (4th Cir.1979); *see also Edwards v. Mayes*, 385 F.2d 369 (4th Cir. 1967). The trial court's failure to give a special rescue instruction here amounted to such a misstatement.

Counsel's failure to request the instruction on rescue seems attributable to his erroneous belief that a contributory fault charge, even one modified by the rescue doctrine, did not belong in this case. Un-

---

6. Fed.R.Civ.P. 51 provides, in relevant part, "No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection."

der such circumstances, the usual course is to charge counsel with error, not the district court. In those rare circumstances where an appellate court does find "plain error," it is not to excuse counsel's lack of knowledge or errors of judgment, but to encourage courts in their role as ministers of manifest justice in the case.

## III

■■■ Appellant also raises for the first time on appeal the issue of unseaworthiness of the disabled tug and scow,[7] a claim based upon the tug's faulty rudder and loss of power, upon the lack of radio communication between the two boats, and upon the absence on either vessel of an anchor or a life-saving skiff. This question implicates a second prong of the rescue doctrine, *viz.*, that the violation of a duty to one who is imperiled is also a violation of duty to the rescuer. *Altamuro v. Milner Hotel, Inc.*, 540 F.Supp. 870 (E.D.Pa.1982); *Hlodan v. Ohio Barge Line, Inc.*, 611 F.2d 71 (5th Cir.1980); *Grigsby Coastal Marine Service of Texas, Inc.*, 412 F.2d 1011 (5th Cir.1969), *cert. dismissed*, 396 U.S. 1033, 90 S.Ct. 612, 24 L.Ed.2d 531 (1970); *Scott v. John H. Hampshire, Inc.*, 246 Md. 171, 227 A.2d 751 (1967); *Wagner v. International Ry. Co.*, 232 N.Y. 176, 133 N.E. 437 (1921). While omission of this question from the instructions does not constitute "plain error" in the same way as the failure to mention the doctrine of rescue, this Rule 51 forfeiture need not work to appellant's detriment on remand, where the presence of reversible error already requires a new trial.

Appellee cannot cite any authority for its proposition that this second aspect of the rescue doctrine is "land based" law unrelated to the doctrine of unseaworthiness. In both *Hlodan* and *Grigsby* the rescuer's claim rested in part upon the unseaworthiness that created the need for a rescue. It is true, as appellee points out, that the

*Grigsby* court stated there is no warranty of seaworthiness to persons coming aboard a vessel because of the unseaworthy condition (*i.e.*, repairmen and the like). 412 F.2d 1011, 1030. To state that this principle applies to a rescuer, however, is to vitiate the rescue doctrine, which the *Grigsby* court declined to do. To the contrary, that court went on to find that the rescuer was a "seaman," entitled to a warranty of seaworthiness on the vessel whose condition created the peril which prompted Grigsby to board for purposes of rescue.

## IV

■■■ Appellant makes three other assignments of error pertaining to the trial court's instructions. As the case is to be retried, we will treat each point briefly. First, she points to the fact that assumption of risk is not a permissible defense in admiralty under either the Jones Act or an unseaworthiness claim, *Socony-Vacuum Oil Co. v. Smith*, 305 U.S. 424, 59 S.Ct. 262, 83 L.Ed. 265 (1939), and that to mask an assumption of risk charge in the garb of contributory negligence constitutes reversible error. *Joyce v. Atlantic Richfield Co.*, 651 F.2d 676 (10th Cir.1981); *Tolar v. Kinsman Marine Transit Co.*, 618 F.2d 1193 (6th Cir.1980); *Smith v. United States*, 336 F.2d 165 (4th Cir.1964). In this case, the specific language singled out by appellant in the court's instructions is unobjectionable because it concerns Great Lakes' negligence, not Furka's. However, as the cases cited make clear, the line between contributory negligence and assumption of risk in a maritime setting is a fine one. "[T]he defense of contributory negligence requires evidence of some negligent act or omission by the plaintiff other than his knowledgeable acceptance of a dangerous condition." *Joyce v. Atlantic Richfield Co.*, 651 F.2d 676, 682–683, *citing Rivera v. Farrell Lines, Inc.*, 474 U.S. 255 (2d Cir.), *cert. denied*, 414 U.S. 822, 94 S.Ct. 122, 38 L.Ed.2d 55 (1973). Here a

---

7. The significance of the ability to raise this claim is that a finding of unseaworthiness permits a plaintiff to recover in damages both pecuniary losses, including loss of support and funeral expenses, and nonpecuniary losses, notably loss of society. Under the Jones Act, only

pecuniary losses (primarily loss of support and decedent's pain and suffering) are recoverable. *Sea-Land Services, Inc. v. Gaudet*, 414 U.S. 573, 587–591, 94 S.Ct. 806, 816–818, 39 L.Ed.2d 9 (1974); *In re Merry Shipping*, 650 F.2d 622, 623–624 (5th Cir.1981).

proper instruction on the rescue doctrine will assist in negating any inference of assumption of risk, but the trial court should take care to distinguish the concepts of "contributory negligence" and "assumption of risk" for the jury.

The trial court's instruction regarding the seaworthiness of the Boston Whaler was proper, though needlessly confused by negatives. In relevant part, the court charged:

> If you find that the defendant did not maintain the Boston Whaler at the dike for the purpose of missions such as the one that Paul Furka had embarked upon just prior to his death, *and* if you further find that he was not ordered to embark upon the mission, but rather that it was his own free choice to do so, then you must find that the Boston Whaler was not unseaworthy. (Emphasis added.)

Appellant objects that the two clauses joined by "and" erect a "double hurdle" for the jury in order to find the Boston Whaler unseaworthy; appellee correctly discerns that any "double hurdle" extends to its position here. The jury found the boat to be seaworthy under an adequate instruction.

Finally, appellant assigns as error the trial court's directed verdict for defendant on the issue of punitive damages under her Jones Act claim. It is unclear whether punitive damages are allowable under the Jones Act,[8] although they appear to be at least theoretically available under general maritime law.[9] We need not reach the issue, since the record contains no evidence

to support a finding of "willful" or "wanton" or "reckless" behavior on the part of Great Lakes that would be necessary to support any punitive damage award. *See, e.g., In re Merry Shipping,* 650 F.2d 622 (5th Cir.1981); *In re Marine Sulphur Queen,* 460 F.2d 89 (2d Cir.), *cert. denied,* 409 U.S. 982, 93 S.Ct. 326, 34 L.Ed.2d 246 (1972); *United States Steel Corp. v. Fuhrman,* 407 F.2d 1143 (6th Cir.1969), *cert. denied,* 398 U.S. 958, 90 S.Ct. 2162, 26 L.Ed.2d 542 (1970).

The case is reversed and remanded for further proceedings in accordance with our instructions.

REVERSED AND REMANDED.

---

8. Two circuit courts have specifically refused to reach the question. *In re Merry Shipping,* 650 F.2d 622 (5th Cir.1981); *Phillip v. United States Line Co.,* 355 F.2d 25 (3d Cir.1966). In a third case, the district court held punitive damages recoverable under the Jones Act and awarded them. The Sixth Circuit reversed on the facts without comment on the legal holding. The opinion is unclear as to whether the underlying cause of action on appeal was the Jones Act claim, the unseaworthiness claim, or both. *Petition of Den Norske Amerikalinje A/S,* 276 F.Supp. 163 (N.D.Ohio 1967), *rev'd sub nom. United States v. Fuhrman,* 407 F.2d 1143 (6th Cir.1969), *cert. denied,* 398 U.S. 958, 90 S.Ct. 2162, 26 L.Ed.2d 542 (1970).

9. *See e.g., In re Merry Shipping* (specifically holding punitive damages recoverable under general maritime law "upon a showing of willful and wanton misconduct by the shipowner in the creation or maintenance of unseaworthy conditions," 650 F.2d 622, 623; *In re Marine Sulphur Queen,* 460 F.2d 89 (2d Cir.), *cert. denied,* 409 U.S. 982, 93 S.Ct. 326, 34 L.Ed.2d 246 (1972); *Renner v. Rockwell International Corp.,* 403 F.Supp. 849 (C.D.Cal.1975). These cases cite general principles in *The Amiable Nancy,* 3 Wheat. 546, 4 L.Ed. 456 (1818), although, like Justice Story, none of them actually finds punitive damages appropriate in the situation at hand.