**Deborah FURKA, Administratrix of the Estate of Paul Furka, Deceased, Plaintiff-Appellant,**

v.

**GREAT LAKES DREDGE AND DOCK COMPANY, Defendant-Appellee.**

No. 86–1173.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 2, 1987.

Decided Aug. 4, 1987.

Rehearing and Rehearing En Banc Denied Sept. 4, 1987.

Leonard C. Jaques, Detroit, Mich., for Plaintiff-Appellant;

Roann Nichols (Warren B. Daly, Jr., Ober, Kaler, Grimes & Shriver, Baltimore, Md. on brief), for defendant-appellee.

Before RUSSELL, PHILLIPS and WILKINSON, Circuit Judges.

WILKINSON, Circuit Judge:

Deborah Furka brought suit under the Jones Act against the Great Lakes Dredge and Dock Company after her husband died in an attempt to aid a fellow seaman. She won a jury verdict, but the $1,200,000 damage award was reduced to $420,000 because the jury found that Furka was 65% contributorily negligent. In *Furka v.*

*Great Lakes Dredge and Dock Company,* 755 F.2d 1085 (4th Cir.1985) (*Furka I*), this court ordered a new trial on the ground that the trial court failed to properly instruct the jury on the doctrine of rescue. At the second trial, the trial court instructed the jury that the decedent was not at fault if he believed that a rescue was required and if a reasonably prudent person would have perceived the need for a rescue. Because we believe that the trial court erroneously applied a reasonable person standard in a maritime rescue situation, we again reverse and remand for a new trial.

### I.

The facts in this case are set forth in *Furka I.* There, this court held that the trial court's jury instruction on contributory negligence "without reference to the special context of rescue" was plain error. 755 F.2d at 1088. We stated that contributory negligence could be inferred only where plaintiff's conduct in attempting the rescue was wanton and reckless. At the second trial, the parties agreed to a special verdict form which put two questions before the jury. The first question was whether a rescue situation existed in this case. If a rescue situation was found, the jury was then to consider whether Furka's conduct during the rescue was reckless or wanton. If no rescue situation existed, however, the *Furka I* jury's finding that the decedent was 65% contributorily negligent and the reduced damage award of $420,000 would be adopted.

At the second trial, the trial judge instructed the jury that:

> In determining whether a rescue situation arose in this case, you shall consider the following: 1) did Mr. Furka perceive the need for a rescue? and 2) if so, was there cause based on all the surrounding circumstances for a reasonably prudent person to have perceived the call to rescue and thereby launch the effort of the attempt?

During its deliberations, the jury sent the court a note asking "[c]ould we please have the definition of rescue as it pertains to this case again? What subjective and ob-jective conditions needed to be present?" The court reinstructed the jury as set forth above. The jury then answered the first special verdict question in the negative, finding that a rescue situation did not exist.

Furka contends that the trial court erred in instructing the jury to consider whether a reasonably prudent person would have perceived the need for a rescue. She asserts that, after *Furka I*, the correct inquiry is whether the decedent acted wantonly and recklessly both in perceiving the need for and in attempting the rescue. Great Lakes concedes that Furka's conduct during the rescue must be evaluated under a wanton and reckless standard, but argues that his perception of the need for a rescue should be measured against that of a reasonably prudent person. We believe that to bifurcate the rescue doctrine in this way is to trivialize it. We thus reverse and remand for another trial.

### II.

In this case, the trial judge correctly instructed the jury that Furka's actions in attempting the rescue must be evaluated under the wanton and reckless standard. He erred, however, in instructing the jury to determine whether a reasonably prudent person would have perceived the need for a rescue. Great Lakes cites numerous cases in which the courts have applied a reasonable person standard to evaluate perception and a wanton and reckless standard to evaluate conduct during the rescue. *See, e.g., Marks v. Wagner,* 52 Ohio App.2d 320, 370 N.E.2d 480, 483 (1977); *Wolff v. Light,* 169 N.W.2d 93, 97 (N.D.1969); *Ellmaker v. Goodyear Tire & Rubber Co.,* 372 S.W.2d 650, 658 (Mo.App.1963). Because we believe that perception and action cannot be neatly separated in maritime rescue situations, we decline to evaluate them by different standards.

The wanton and reckless standard arose at common law in recognition of the fact that one may be driven to acts during a rescue attempt that would not befit a reasonably prudent person. Rescue springs more from the impulse to aid than from any process of thought or measure of re-

flection. The wanton and reckless standard aims to encourage the impulse to assist. The law will not deter rescuers by charging them "with the consequences of errors of judgment resulting from the excitment and confusion of the moment." *Corbin v. Philadelphia*, 195 Pa. 461, 45 A. 1070, 1074 (1900).

In *Furka I*, this court noted that the wanton and reckless standard was particularly applicable to maritime rescue attempts because "of all branches of jurisprudence, the admiralty must be the one most hospitable to the impulses of man and law to save life and limb and property." *Furka I*, 755 F.2d at 1089, *quoting Grigsby v. Coastal Marine Service of Texas, Inc.*, 412 F.2d 1011, 1021 (5th Cir.1969). The court sought to conform the standards of maritime recovery to the dangers inherent in maritime work. It declined to impute negligence to those whose efforts reflect "the best traditions of seafaring men." *Furka I* at 1089.

We believe that the maritime rescuer's perception of the need for immediate action must be evaluated under the same wanton and reckless standard. In rescue situations, perception and response are inextricably linked. The same standard governing conduct that saves the lives of seamen must apply to the perception that generates the act. By definition, the perception of danger requiring prompt action is formed under the same stress and on the same imperfect information as the rescue itself. If rescuers will not be charged with the simple negligence of their acts "in the excitement and confusion of the moment," it is anomalous to charge them with a failure to prudently verify that immediate action is necessary. *See Wagner v. International Ry. Co.*, 232 N.Y. 176, 133 N.E. 437 (1921) (in the rescue context, "the law does not ignore the reactions of the mind in tracing conduct to its consequences. It recognizes them as normal.")

Furka's course of conduct was continuous. To subject one part of it to a negligence standard and another to a wanton and reckless standard is to have angels dancing again on the head of the proverbial pin. Unless the perception and the act of rescue are foolhardy, negligence will not be imputed. We hold that, in admiralty, the correct standard is whether the rescuer was wanton and reckless both in perceiving the need for a rescue and in undertaking it.

The instruction failed to reflect the standard set forth in *Furka* I. We reverse the judgment below and remand for further proceedings in accordance with this opinion.

REVERSED AND REMANDED.