NIEMEYER, Circuit Judge,
dissenting:
Because the Coast Guard neither undertook nor sponsored a search and rescue operation in this case and because, in any event, the Coast Guard was not shown to have been “wanton or reckless,” I submit that it cannot be found liable for failing to rescue the Cornetts and young Bobby Lee Hurd from the deadly consequences of their tragic boating accident.
In the early morning hours of December 29, 1997, the Cornetts’ boat struck a jetty outside of Charleston Harbor and sank. At 6:10 a.m., Harbor Pilot Gerald Lucas, who was at the helm of the M/V Pearl Ace, was told by a boatswain on the vessel that the boatswain had heard someone screaming for help near Buoy 22. Lucas communicated this information to the Office of the Harbor Phots Association, which in turn passed the information on to the Coast Guard at 6:27 a.m. The material portions of the telephone conversation between the Pilots’ Office and' the Coast Guard were as follows:
Pilots’ Office: Ok. Um, we got a phot inbound, um, on a car carrier and he just passed 22 buoy, you know right inside the harbor.
CG: Uh huh, twenty, uh.
Pilots’ Office: Twenty-two.
CG: Twenty-two. Ok.
Pilots’ Office: And, uh, the boatswain on ship radioed to the bridge that he heard somebody yelling for help and the pilot boats have gone, the phot boat was here at the dock, they’ve gone back out to look around, but the pilot wanted me to call you to let you know what was going on, like I said, we’ve got the pilot boat out there looking for somebody now.
CG: They weren’t able to talk to them any.
Pilots’ Office: WeE no, it was somebody in the water.
CG: Oh, somebody in the water.
Phots’ Office: Yeah, that’s what they think.
CG: Oh, I see.
*86 Pilots’ Office: Um, so the pilot boat, they were just getting up here to the dock but they just turned around and went back out to 22 to look around, what they’re going to find I don’t know.
CG: Ok, how, many, which pilot boat went out there?
Pilots’ Office: Carolina, excuse me, wait a minute, we had problems with the boats last night. Palmetto State.
CG: Palmetto State.
Pilots’ Office: But I guess once they get back to 22, I can call you back and let you know what they see or hear, but I don’t even ...
CG: Ok, ok, well, I’ll alert the station and they’ll determine if they want to get underway also.
Pilots’ Office: Oh, ok. Well, I can, if you want, I can call you back once they get out there to 22 buoy and see what they find.
CG: Ok, could you.
Phots’ Office: Yeah, yeah.
CG: Alright.
The Pilots’ Office called back 20 minutes later and reported that nothing had been seen or heard from the location of Buoy 22, and the Coast Guard took no further action. These conversations were all of the objective facts relating to any “undertaking” by the Coast Guard to conduct a search and rescue operation, either directly or through the Pilots’ Office.
In addition to transcripts of these conversations, evidence was presented at trial that if the Coast Guard had undertaken a search and rescue at the time it received the 6:27 call, some of the persons from the Cornetts’ boat could have been saved.
The district court concluded that the Coast Guard had actually undertaken a search and rescue through the Office of the Harbor Pilots Association and that the failure to conduct a more comprehensive search after the Pilots’ Office reported that the phot boat had found nothing near Buoy 22 was “wanton and reckless.” Accordingly, it entered judgment in favor of the plaintiffs against the Coast Guard for $19 million. I submit that this decision is both alarming in substance and contrary to Fourth Circuit law.
While the Coast Guard is authorized to conduct search and rescue operations, it has no duty to do so. Kelly v. United States, 531 F.2d 1144, 1147-48 (2d Cir. 1976); McLaughlin v. United States, 671 F.Supp. 72 (D.Me.1987). Only if the Coast Guard undertakes a search and rescue operation and conducts the operation wantonly or recklessly can it become liable for its conduct. See, e.g., Furka v. Great Lakes Dredge & Dock Co., 755 F.2d 1085, 1088-89 (4th Cir.1985) (“Furka I") (holding that if a search and rescue operation has been undertaken, “there must be evidence of wanton or reckless behavior on plaintiffs part before any fault may be assigned”); see also Furka v. Great Lakes Dredge & Dock Co., 824 F.2d 330, 331-32 (4th Cir.1987) (“Furka II") (same). In Furka I, we explained that “of all branches of jurisprudence, the admiralty must be the one most hospitable to the impulses of man and law to save life and limb and property.... Law must encourage an environment where human instinct is not insular but responds to the plight of another in peril.” 755 F.2d at 1089 (internal quotation marks and citations omitted); see also Furka II, 824 F.2d at 332. We observed that a negligence standard, rather than a wanton-or-reckless standard, would inappropriately discourage rescue efforts.
In this case, there was no evidence that the Coast Guard undertook a search and rescue operation. Moreover, correctly applying the wanton-or-reckless standard of care, the Coast Guard could not be found liable simply because it did nothing.
*87 First, relying on what the Coast Guard telephone operator was thinking or should have been thinking, rather than on what he said or what the Coast Guard did, the majority concludes that the Coast Guard had in some fashion undertaken a search and rescue operation through the efforts of the Pilots’ Office. This conclusion could only have been grounded on the fact that the Coast Guard agreed to receive information of what the pilot boat would find after completing its already-begun search operation (“we’ve got the pilot boat out there looking for somebody now”). The full evidence on which to find that the Coast Guard had undertaken an operation or commissioned someone else to undertake it must therefore be contained in the following portion of the 6:27 telephone call:
Pilots’ Office: Well, I can, if you want, I can call you back once they get out there to 22 buoy and see what they find.
CG: Ok, could you.
Pilots’ Office: Yeah, yeah.
CG: Alright.
To convert this conversation, in which the Coast Guard agreed only to receive information, into a Coast Guard sponsored search or rescue operation is simply unsupportable. And no case law can be found to construe such an agreement to receive information as the Coast Guard’s undertaking of a search and rescue operation. Indeed, the cases whose facts are closest to these circumstances have found to the contrary — that the Coast Guard had not undertaken a search and rescue operation merely by seeking and receiving information. See, e.g., Daley v. United States, 499 F.Supp. 1005 (D.Mass.1980).
Furthermore, the entire 6:27 conversation is circumscribed by the Coast Guard’s express statement limiting its role. Rather than saying that the Coast Guard would undertake a search and rescue operation or was authorizing the Pilots’ Office to do so on its behalf, the Coast Guard telephone operator stated instead: “I’ll alert the station and they’ll determine if they want to get underway also.” (Emphasis added). By indicating that it would determine later whether to get underway, the Coast Guard precluded an interpretation that it was then designating the Pilots’ Office to act on its behalf. As we know, the Coast Guard never determined to “get underway” and therefore could not be held hable.
In addition, when the Pilots’ Office called the Coast Guard, it had already, on its own, commenced a search, telling the Coast Guard, “they’ve gone back out to look around ... we’ve got the pilot boat out there looking for somebody now.” It could hardly be concluded that the Coast Guard commissioned the Pilots’ Office’s search operation when the operation commenced before the Coast Guard even knew about it.
I would conclude, as a matter of law, that the 6:27 telephone conversation was insufficient to support a conclusion that the Coast Guard had sponsored a search and rescue operation. See Daley, 499 F.Supp. at 1009; Mazzullo v. United States, 1980 A.M.C. 1088, 1047 (D.D.C. 1979).
The district court also concluded that when the Pilots’ Office reported 20 minutes later that the pilots had found nothing, the Coast Guard acted wantonly and recklessly when it did not go out on its own. The majority agrees with the district court, holding that by doing nothing, the Coast Guard somehow terminated the search and rescue purportedly undertaken by the Pilots’ Office but not authorized by the Coast Guard. If the Pilots’ Office had undertaken the search, it, not the Coast Guard, terminated the search. By doing nothing, the Coast Guard terminated nothing and was not wanton or reckless. In charging the Coast Guard with wantonness *88 or recklessness, the majority imputed the Coast Guard with a duty it did not have, a duty that would arise only if the Coast Guard had actually undertaken a search and rescue operation which, as shown above, it did not do. If in fact the search and rescue was a joint effort of the Pilots’ Office and the Coast Guard, neither knew that fact. Yet this purported joint effort improperly forms the basis of the majority opinion.
For the foregoing reasons, I respectfully dissent.